UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul Eugene UMBOWER, a/k/a Paul
Eugene Parker, Defendant-Appellant.

No. 78–5792.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1979.

Leon St. John, West Palm Beach, Fla. (Court-appointed), for defendant-appellant.

Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GOLDBERG, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge: ·

Defendant, Paul Eugene Umbower, upon a stipulation of facts presented by the government, was tried before the district court and found guilty of violating 18 U.S.C. § 2113(a) (robbery of a federally insured facility) and 18 U.S.C. § 2 (aiding and abetting). Defendant's conviction followed denial of two motions to dismiss pursuant to the Interstate Agreement on Detainers Act, Pub.L. No. 91–538, 84 Stat. 1397, 18 U.S.C. App. § 2 (1976),[1] and the Federal Speedy Trial Act, Pub.L. No. 93–619, 88 Stat. 2076, 18 U.S.C. § 3161 *et seq.* (1976). It is the alleged error in denying these motions which forms the basis of this appeal. We affirm.

The chronology of events forming the basis of this appeal is crucial to the resolution of issues here raised. Accordingly, a somewhat detailed accounting of events prior to defendant's conviction is appropriate.

On March 29, 1978, the Flagler National Bank of the Palm Beaches, North Palm Beach, Florida, was robbed.[2] A complaint charging appellant Umbower with the Florida robbery was filed in the United States District Court for the Southern District of Florida. Pursuant to that complaint, on April 12th a warrant for the appellant's arrest was issued by a magistrate of the Southern District.

Shortly before the issuance of that warrant by the Southern District of Florida, appellant was arrested by the Commonwealth of Pennsylvania for violation of probation and imprisoned in the Bucks County Jail. On April 19, federal officials in the Southern District of Florida lodged a detainer against appellant with the superintendent of the Bucks County Jail. Three days later, another detainer was filed against appellant, this one by the State of New Jersey.

On May 4, a United States magistrate for the Eastern District of Pennsylvania issued an order to the superintendent, ordering him to produce the appellant on May 11. There is nothing in the record which indicates why appellant was ordered to appear before this United States Magistrate. For reasons not reflected in the record, Umbower was not brought before the magistrate on May 11, but rather, pursuant to another order dated May 16, was produced before a United States magistrate of the Eastern District of Pennsylvania on May 22 at which time the Defender Association of Philadelphia, Federal Courts Division, was appointed to represent him. At the May 22 hearing, Umbower was advised of his rights and the charges against him, counsel was appointed, and bail was set. Thereafter, defendant was returned to the Bucks County Jail where, pursuant to a re-sentencing on May 8, he was serving a three to six month sentence for his probation violation.

On May 23, the United States magistrate for the Eastern District of Pennsylvania issued another order to the superintendent of the Bucks County Jail to produce the appellant on May 31, 1978. Three days later, appellant was indicted by a Federal Grand Jury in the Southern District of Florida for the previously mentioned March 29 bank robbery. The previously scheduled May 31, 1978 hearing was continued until June 1, at which time it was again continued until June 7. On the seventh of June, a removal hearing on the outstanding warrant for the appellant's arrest was held in the Eastern District of Pennsylvania. Appellant admitted his identity, and removal to Florida was ordered. Nevertheless, appellant was retained in the Bucks County Jail until August 22, when, with only a short time left to serve on his Pennsylvania sentence, he waived extradition on the New Jersey detainer and was transferred to the Mercer County Jail in Trenton, New Jersey.

On September 20, the United States District Court for the Southern District of

1. Provisions of the Interstate Agreement on Detainers (IAD) will be referred to herein by their original article numbers, as set forth in Section 2 of the Interstate Agreement on Detainers Act.

2. All events occurred in 1978 unless otherwise noted.

Florida, acting on the motion of the United States Attorney in that district, issued a writ of Habeas Corpus Ad Prosequendum to the warden of the Mercer County Jail in Trenton.

On the following day, appellant had completed his New Jersey sentence and was held by the federal marshal. On September 22, appellant filed a *pro se* motion for release from custody and for dismissal of the Florida indictment.

On September 28, the United States Marshal for the Eastern District of Pennsylvania transferred the appellant from New Jersey to Philadelphia, Pennsylvania. He was finally transferred from Pennsylvania to Miami on October 14. Four days later, appellant was arraigned on the bank robbery indictment in West Palm Beach in the Southern District of Florida. On November 13, 1978, counsel for appellant filed motions to dismiss the indictment. These motions are the subject of this appeal. After the motions to dismiss were denied, a bench trial was conducted, and on November 16 appellant was convicted. He was sentenced to a term of imprisonment for six years on the fifteenth of December.

Three points are raised on appeal. Appellant argues that his presence before the United States Magistrate in the Eastern District of Pennsylvania for purposes of a removal and identity hearing, constituted his "arrival in the receiving state" within the meaning of the Interstate Agreement on Detainers, such that: 1) his subsequent return to Bucks County Jail constituted "being returned to the original place of imprisonment" without resolution of the detainer, the sanction for which is dismissal of the pending charges pursuant to Article IV(e) of the IAD, and 2) failure to commence trial on the federal charges within 120 days required dismissal of those charges pursuant to Article IV(c) of the IAD. Appellant's third argument is that his appearance before the United States magistrate in Pennsylvania constituted an appearance "before a judicial officer of the court in which said charge is pending" for Speedy Trial Act purposes, such that failure to arraign him within ten days mandated dismissal of the pending charges, 18 U.S.C. § 3161(c) (1976).

The origins of the Interstate Agreement on Detainers predate its adoption by the United States in 1970. The IAD is the product of over two decades of academic, judicial and legislative study of the problems associated with detainers based on untried indictments, informations or complaints. As detainers often interfere with programs of prisoner treatment and rehabilitation, the IAD seeks to encourage the expeditious disposition of charges giving rise to detainers by providing cooperative procedures among member states to facilitate such disposition.

The operative provisions of the IAD are contained in Articles III and IV. Article III provides a procedure by which a prisoner against whom a detainer has been lodged can demand a quick disposition of the charges underlying a detainer. At no time did appellant exercise his rights under Article III. Article IV, the article central to this appeal, enables a prosecutor who has lodged a detainer against a prisoner in another state to secure the prisoner's presence for disposition of the pending charges. After filing a detainer, the prosecutor can have the prisoner made available for trial by presenting "a written request for temporary custody or availability" to the officials of the state in which the prisoner is incarcerated. Art. IV(a). Once the prisoner has "arrived" in the receiving state, two limitations on the prosecuting authority obtain. First,

> [i]n respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdic-

tion of the matter may grant any necessary or reasonable continuance.

Art. IV(c).[3]

In addition, the "receiving state" is required to try the prisoner on the charge which formed the basis of the detainer before returning him to the original place of imprisonment:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Art. IV(e).

Adoption of the Interstate Agreement on Detainers by the United States has presented some serious problems of interpretation and has been fertile grounds for litigation. The IAD was proposed by the Council on State Governments as suggested state legislation and was consequently not designed for application to the federal government. The legislative history surrounding Congress' adoption of the IAD in 1970 is brief and does not fully explore the ramifications of the Agreement's application to the federal government.

Being designed for adoption by state legislatures, the Interstate Agreement on Detainers contemplates independent and geographically distinct sovereign state units. This concept causes problems when applied to the federal government. For example, the IAD's reference to trial being commenced within one hundred and twenty days of the arrival of the prisoner in the "receiving state" poses no problem if the prisoner is being transferred from Florida to Georgia. Problems are presented if a prisoner is being transferred from a state institution in Florida to a federal court in that state. In the latter circumstance, it can be argued that the prisoner has been in the United States, the "receiving state," continuously.

The Supreme Court has attempted to resolve this and other problems by holding that the United States may be a "receiving state" under the Agreement. *United States v. Mauro*, 436 U.S. 340, 353–56, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Although the Court's holding in *Mauro* simplifies certain matters, it leaves other questions unanswered. Happily, we need not explore the myriad ambiguities in the Agreement. Only two are presented here for resolution.

Appellant argues that his being brought to the United States District Court for his identification hearing constitutes his "arrival . . . in the receiving state." Thus, appellant argues, his subsequent return to the state prison in which he had been continuously confined constitutes his "being returned to the original place of imprisonment" and compels dismissal of the federal charge under Article IV(e). In other words, appellant argues that under the IAD, the United States is one big federal "state" for purposes of a prisoner's "arrival" in that state. We are unpersuaded.

▮ The IAD contemplates separate geographic and distinct jurisdictional units. To hold that a defendant has arrived in the receiving state when he arrives before a court having no jurisdiction to resolve the charges against him, ignores the framework of the Agreement. Rather, as applied to the federal government, the statute must necessarily contemplate the arrival of the defendant in the jurisdiction of a court which is fully competent to resolve the pending charges underlying a detainer issued by the authorities in that district.[4]

---

**3.** Article V(c) provides that the indictment, information, or complaint on the basis of which the detainer has been lodged shall be dismissed if the prisoner is not brought to trial within this period.

**4.** In *United States v. Chico*, 558 F.2d 1047 (2d Cir. 1977), *cert. denied*, 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978) the Second Circuit considered a similar argument. In that case, appellants were removed from the state prisons in which they were confined pursuant to a writ of habeas corpus *ad prosequendum*, 28 U.S.C. § 2241(c)(5). Appellants were brought before the federal district court and arraigned. After completion of the district court proceedings, appellants were returned to the same state

Thus, in our case, defendant did not arrive in the receiving state on May 22, when he was first brought before the United States Magistrate in the Eastern District of Pennsylvania. Rather, he arrived on October 14, 1978, the date of his arrival in the Southern District of Florida. At no time after his arrival was he returned to "the original place of imprisonment." Accordingly, appellant's first argument must fail.

Appellant's second point on appeal must fail under similar analysis. Umbower argues that the 120-day limit of Article IV(c) began to run on his first appearance before the United States Magistrate in Pennsylvania—that is, upon his arrival in the receiving state. But we hold that the Southern District of Florida is the receiving state for purposes of the IAD. As Umbower did not "arrive" in the Southern District of Florida until October 14, 1978, the one hundred and twenty day limitation contained in Article IV(c) expired well after his trial on November 16, 1978.[5]

Appellant's third argument is that the district court erred in refusing to dismiss his indictment on the grounds that his arraignment occurred beyond the time limit specified in the Speedy Trial Act. Umbower was arraigned on October 18, 1978, the date of his first appearance before the district court in the Southern District of Florida.

■ The pertinent portion of the Speedy Trial Act concerned in appellant's third argument provides in relevant part:

The arraignment of a defendant charged in an information or indictment . . . shall be held within ten days from the filing date . . . of the information or indictment, or from the date the defendant has been ordered held to answer and has appeared before a judicial officer of the court in which such charge is pending whichever date last occurs.

18 U.S.C. § 3161(c) (1976). Umbower argues that his appearance before the United States Magistrate in the Eastern District of Pennsylvania constitutes an appearance "before a judicial officer of the court in which such charge is pending," thus triggering the ten day arraignment rule of Section 3161(c).

Unlike the Interstate Agreement on Detainers, this provision of the Speedy Trial Act is clear on its face. The time limit for arraigning Umbower did not begin to run until Umbower had been ordered held to answer and had appeared before "a judicial officer of the court in which [the] charge [was] pending." 18 U.S.C. § 3161(c) (1976).

prisons form which they had been taken. As in the instant case, appellants in *Chico* argued that their return to state prison without completing a trial on the pending charges required dismissal of those charges pursuant to Article IV(c) of the Agreement.

The Second Circuit noted that the Agreement sought to facilitate rehabilitation of a prisoner in two ways. First, by requiring prompt disposition of charges pending in another jurisdiction, the Agreement reduces the period during which the pending charges may have an adverse effect on the prisoner's ability to participate in rehabilitative programs. Second, by requiring a receiving state to completely adjudicate pending charges before returning the prisoner to the original place of imprisonment, the Agreement minimizes interruptions with the rehabilitative programs at the state institution from which the prisoner is removed. Neither of these purposes, the Court reasoned, are frustrated when a prisoner is removed from the prison of a state for a few hours to appear in federal court, when the prisoner is not held at any place of imprisonment other than that of

the sending state and there is not interruption of his rehabilitation in that jurisdiction.

In addition, the Court noted that the statutory language "returned to the *original* place of imprisonment" necessarily implies removal to *another* place of imprisonment in the receiving state. Brief appearances before the federal court do not constitute imprisonment in another place, the Second Circuit reasoned. Accordingly, the court affirmed the district court's denial of appellant's motion to dismiss.

We need not accept or reject the holding in *Chico* in that our holding is that the Southern District of Florida was the receiving state for purposes of the IAD.

5. Our holding is limited to interpretation of "arrival" under Article IV(c) of the Agreement. There may be other circumstances, credit for time served for example, where we would hold that a defendant had arrived in the custody of the federal government upon incarceration in any federal district pursuant to a detainer and a written request.

Umbower's arraignment was his first appearance before any judicial officer in the Southern District of Florida. Accordingly, his arraignment was within the time limit specified by statute. *United States v. Taylor*, 569 F.2d 448, 450 (7th Cir.), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978).

In accordance with the foregoing, the trial court's denial of defendant's motions to dismiss are affirmed.

AFFIRMED.