**Jesse Joe KOEHLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00157–CR.**

Court of Appeals of Texas,
San Antonio.

May 25, 1983.

Rehearing Denied June 28, 1983.

Fred J. Manning, David K. Chapman, San Antonio, for appellant.

Bill White, Dist. Atty., Ron Mata, Lawrence J. Souza, Charles B. Tennison, Asst. Dist. Attys., San Antonio, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a conviction for murder with the jury assessing punishment at life imprisonment.

■ Appellant's first ground of error alleges non-compliance by the State with the Interstate Agreement on Detainers Act (IAD). Tex.Code Crim.Proc.Ann. art. 51.14 Art. IV(c) (Vernon 1979), requires that any trial "made possible" by the IAD should commence within 120 days of the arrival of the prisoner in the receiving state. Appellant was arrested in Michigan and waived extradition to Texas. He arrived in Bexar County, Texas, on November 11, 1978, and was released on bond three days later. He was arrested on December 7, 1978, on a federal parole violation warrant and transferred to the El Reno, Oklahoma, Federal Correctional Institution February 10, 1979. He was returned to Bexar County from El Reno, February 25, 1979, on a writ of habeas corpus *ad prosequendum,* and his first trial began April 16, 1979. Appellant contends the State should have brought him to trial within 120 days from November 11, 1978, or at the latest, within 120 days of December 7, 1978.

The IAD is concerned with expeditious and orderly disposition of criminal charges pending in one state against a prisoner already incarcerated in another jurisdiction. The agreement provides two ways that this can be accomplished. Under article III of the IAD, a person who has entered upon a term of imprisonment in one state may himself initiate a request for final disposition of charges against him in any other state that has lodged a detainer against him. Article IV of the IAD provides for an appropriate officer to lodge a detainer against a prisoner serving a term of imprisonment in a sister state and, subsequently, to present a written request for temporary custody of the prisoner. In response to a request made under article III or article IV, the act requires the sending state to offer to deliver temporary custody. The IAD further provides in article IV(c), "In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state,..."

No copy of any detainer or "written request for temporary custody" is in the record. There is merely a stipulation between the parties that:

> We are stipulating that on November 7th, the defendant Jesse Joe Koehler was arrested in Michigan, and that the authorities were notified and a detainer was placed on the defendant by the Texas authorities on that same date.... On the 8th day of November, the defendant waived extradition so that he could return to Bexar County; and that he arrived in Bexar County on the 11th day of November, 1978.

There is nothing in the record to indicate that appellant was serving a term of im-

prisonment in Michigan.[1] The Michigan State police officer who arrested appellant testified that the arrest was on a warrant from Bexar County, Texas, for the crime of murder. Neither is there evidence that a written request for temporary custody, required by the IAD, was ever presented to authorities in Michigan.[2] With the possible exception of the bare statement that Texas authorities had placed a detainer on the appellant, the record is devoid of any effort on the part of the appellant or the State to invoke the provisions of the IAD.

The Uniform Criminal Extradition Act, Tex.Code Crim.Proc.Ann. art. 51.13 (Vernon 1979), provides for the arrest without a warrant on information that the accused is charged with a felony in another state. Any person so arrested may waive the issuance and service of a governor's warrant and all other extradition proceedings and consent to return to the demanding state. We cannot avoid the conclusion that appellant's travel to Texas from Michigan was under the provisions of the Uniform Criminal Extradition Act and not the IAD. The later change of custody from federal authorities to state authorities was by virtue of the *ad prosequendum* writ, not the IAD.

Since appellant's presence in Texas was not pursuant to the IAD, Tex.Code Crim. Proc.Ann. art. 51.14 (Vernon 1979), the 120-day requirement contained therein does not apply. Appellant's first ground of error is overruled.

Appellant's second, third, and fourth grounds of error pertain to the trial court's grant of a mistrial, on the State's motion, after the jury was unable to reach a unanimous verdict at appellant's first trial. A review of the record in the first trial indicates that the testimony during the guilt phase lasted approximately seven days and involved some twenty-eight witnesses. Much of the record involves matters that occurred while the jury was not in the courtroom. The jury retired at approximately 4:15 p.m., May 1, 1979, to begin deliberation on guilt or innocence. At 12:25 a.m., May 2, 1979, the judge ordered the jury to stop deliberation until 9:00 a.m. the following morning. The record does not indicate the exact time that the jury resumed deliberation, but we assume it was approximately 9:00 a.m. At 10:30 a.m. the court gave a supplemental charge in response to the jury's request for testimony of certain witnesses. The jury continued deliberating through the day and at 3:20 p.m. the foreman sent the following communication to the court:

> Your Honor, we have reached a point where it is evident that a unanimous decision cannot be reached and are of one mind that further deliberations will be fruitless.

The court instructed the jury to continue deliberation and inquired as to the numerical division. At 4:10 p.m. the foreman advised the court that the numerical division stood at 9-to-3. At 4:55 p.m. the foreman advised the court:

> Your Honor, since receipt of your supplemental charge number four we have continued to deliberate and the present numerical division is 10–2. Even with your supplemental charge concerning the possibility of another trial, the two minority members reaffirmed their inability to ever change their verdict in good conscience.

The court gave another supplemental charge, asking the minority jurors to consider the opinion of their fellow jurors with a mind to changing their vote if it would

---

1. The fact that appellant was released on bond by Texas authorities contradicts any suggestion that he was under a term of commitment in Michigan and that only temporary custody had been offered to Texas. He obviously was not serving a term of imprisonment when he was arrested as a federal parole violator.

2. The writ of habeas corpus *ad prosequendum* served on federal authorities could be classified

as a "written request for temporary custody" within the meaning of article IV of the IAD. *United States v. Mauro,* 436 U.S. 340, 361, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). But the State may also obtain custody of a prisoner for trial under the rules of comity by an *ad prosequendum* writ without invoking the IAD. *United States v. Mauro, supra; United States v. Cogdell,* 585 F.2d 1130, 1136 (D.C.Cir.1978).

not do injury to their conscientious scruples. At 7:45 p.m. this final communication was received from the jury:

> Your Honor, despite continued deliberations and your supplemental charge number five, our numerical division still stands at 10–2. The two minority members have stated that it would hurt their conscientious scruples to change their verdict. We cannot emphasize too strongly how pointless we feel it is to continue.

The entire panel was then asked individually, "Is there a reasonable probability that further deliberations would result in a verdict?" Each individual juror responded in the negative. The State's motion for mistrial was then granted. The appellant objected.

█ Tex.Code Crim.Proc.Ann. art. 36.31 (Vernon 1981) provides:

> After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree.

The rule is well settled that the exercise of discretion by a trial court in declaring a mistrial is determined by the amount of time the jury deliberates considered in light of the nature of the case and the evidence. *Beeman v. State,* 533 S.W.2d 799, 800 (Tex. Cr.App.1976); *O'Brien v. State,* 455 S.W.2d 283, 285 (Tex.Cr.App.1970). The record indicates the jury had deliberated for 18 hours and 55 minutes less time for meals. Although there were seven days and 1,020 pages of testimony by 28 witnesses during the guilt phase of the trial alone, much of this took place out of the presence of the jury. The charge reflects the simplicity of the issues to be decided. *See Lindsey v. State,* 393 S.W.2d 906, 908 (Tex.Cr.App. 1965). The jury received instructions on circumstantial evidence and was asked to find the defendant guilty or not guilty of murder. There were no defensive issues to consider and no lesser included offenses.

Appellant admits in his brief that the only issue before the jury in the first trial was the credibility of the State's main witness.

█ The total time the jurors had deliberated, the fact that the vote did not change in the final three hours of deliberation, and both the individual and collective expression by the jurors that further deliberation would be pointless, demonstrates that the court did not abuse its discretion in discharging the jury and declaring a mistrial. *Patterson v. State,* 598 S.W.2d 265, 268 (Tex.Cr.App.1980); *Strickland v. State,* 169 Tex.Cr.R. 633, 336 S.W.2d 185, 186 (Tex. Cr.App.1960). Appellant's second ground of error is overruled.

█ By grounds of error three and four, appellant urges us to find that (1) the vote of the previous jury was ten to two for acquittal and should constitute reasonable doubt as a matter of law, and (2) the evidence presented at the first trial was insufficient and therefore the state should be barred from further prosecution. One of the appellant's attorneys testified at the hearing on motion for new trial that the jury indicated that they were "ten to two for acquittal". The record shows only the numerical division of the jury on their communications to the court. Whatever the preference the majority of the jury may have had, they did not reach a unanimous verdict. While a unanimous vote of twelve jurors is not required by the United States Constitution in a criminal trial,[3] it is required in Texas. Anything short of a unanimous verdict has no legal significance in a criminal trial except as a possible ground for a mistrial. *Brown v. State,* 508 S.W.2d 91, 93 (Tex.Cr.App.1974). A note from the jury indicating their numerical division would not be construed as a verdict of acquittal unless it was plainly intended as a verdict. *See Antwine v. State,* 572 S.W.2d 541, 542 (Tex.Crim.App.1978). We hold that none of the notes from the jury were intended as a verdict; and therefore, they will not be treated as such. Appellant's prior trial resulted in neither a conviction

---

3. *See Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

nor an acquittal. The discharge of the jury was within the discretion of the trial court and does not constitute a legal bar to further proceedings. Appellant has no exemption from another trial. *Dreyer v. Illinois,* 187 U.S. 71, 85–86, 23 S.Ct. 28, 32–33, 47 L.Ed. 79, 86 (1902), Tex.Code Crim.Proc. Ann. 36.33 (Vernon 1981).

After a reversal for insufficiency of the evidence, a subsequent retrial violates the constitutional protection against double jeopardy. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). But this is not a situation of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. The state did not use any witnesses who had not testified at the prior trial. We have reviewed the transcript of the first trial and find that the evidence would have been sufficient to uphold a conviction if a unanimous jury had been convinced. *Burks v. U.S.,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). Appellant's third and fourth grounds of errors are overruled.

The fifth and sixth grounds of error contend that the trial court refused to allow appellant the opportunity to impeach the state's primary witness. The state had filed a motion in limine prior to trial which the court had granted. The motion precluded the defense from referring to "any specific acts of misconduct of any witness without first having taken the matter up with the court outside the presence of the jury to determine the relevant factors." When the prosecutor finished direct examination of the witness Verna Blackwell, he passed the witness for cross examination and asked permission to approach the bench, whereupon the following transpired:

THE COURT: All right. What's our problem?

MR. MATA: Judge, Ms. Marquez now has a witness on cross examination and from the first trial I know that Ms. Marquez will try to get into specific acts of misconduct. I would like to have a hearing in front of the court recording exactly what Ms. Marquez—

THE COURT: That's why we are here. Let's have the hearing. What is it that you want to ask this lady?

MS. MARQUEZ: Judge, incidents where she had attacked Mr. Koehler in public, throwing drinks at him and tried to attack girls that had been in his company and different things of that nature and I want to show motive and prejudice.

THE COURT: You don't mind her telling about him if you want to show her character?

MS. MARQUEZ: We have not put his reputation in question. We are saying she is testifying because she has a motive, she is prejudice, attacked on numerous occasions and attacked other women he has been with.

THE COURT: She is going to have the right to tell about him, what he has done to her and to other women that she knows about. It works both ways. I understand that you have a right, but she has a right to know about certain things he has done. Besides, that is not material. That would be subject to introduction. What she has done to the people.

MR. MATA: That's our position, what—involvement between her and other people has no relevancey.

MS. MARQUEZ: It does in so far as it shows her animosity and prejudice, your honor.

MR. MATA: Against other people, but not against the defendant.

THE COURT: It may show what she has done against other people. What has she done against him?

MS. MARQUEZ: She has attacked him publicly ... she has thrown drinks, chairs in public at him.

THE COURT: She will have to tell him why she did it. She did it because he did it and we will have an open thing and it will be all up to him.

MR. MATA: I'm sorry to interrupt. This is what happened in the first trial.

THE COURT: This is the first trial. What happened in the first trial has no

bearing in this case and I don't think it is proper and I will rule it out. Let's have a fifteen minute recess."

Appellant now contends that he was not allowed to show animus, bias, motive and ill-will of the witness Verna Blackwell. He also contends he was not allowed to impeach Blackwell with a prior inconsistent statement. Appellant does not point out any other place in the record where cross-examination or impeachment was limited except the above quoted bench conference. *See* Tex.Code Crim.Proc.Ann. art. 40.09(9) (Vernon 1981).

Where an appellant contends that his cross-examination of a witness has been unduly limited, nothing is preserved for review unless the record shows by bill of exception or otherwise what questions he wanted to propound and the answers he expected therefrom. *Barnett v. State* 615 S.W.2d 220, 223 (Tex.Cr.App.1981), *appeal dism'd* 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75, *Toler v. State,* 546 S.W.2d 290, 295 (Tex. Cr.App.1977), *Calverley v. State,* 511 S.W.2d 60, 61 (Tex.Cr.App.1974). Appellant contends that in accordance with the alternative method of making informal bills of exception, his counsel gave a concise statement of what the impeaching evidence would be. Tex.Code Crim.Proc.Ann. art. 40.09, § 6(d)(1) (Vernon Supp.1982–83). A bill of exception must be complete within itself and must stand or fall by its own allegations. The bill must plainly set out any error sought to be preserved for review. *Garza v. State,* 622 S.W.2d 85, 89 (Tex.Cr. App.1981); *Herrin v. State,* 525 S.W.2d 27, 29 (Tex.Cr.App.1975) (Opinion on State's Motion for Rehearing). Here the error, if any, is unclear. The statement of the court that the alleged attacks of the witness on the appellant "would be subject to introduction anyway" was consistent with the court's ruling on the motion in limine and could not be construed as a ruling excluding proffered testimony. The other statement of the court ruling out what happened in the first trial cannot be construed as limiting the cross-examination in the present trial of the witness Blackwell. In the absence of a formal or informal bill of exception or a transcription of the court reporter's notes showing the nature of any excluded testimony and the objections and exceptions made, no error is preserved for review. Grounds of error five and six are overruled.

Appellant's seventh ground of error contends that when defense counsel failed to urge the introduction of Blackwell's prior inconsistent statement, counsel was ineffective as a matter of law. The standard to be applied on such an issue is "reasonably effective assistance of counsel" derived from a firm command of the facts of the case as well as the governing law. *Ex Parte: Duffy,* 607 S.W.2d 507, 516 (Tex. Cr.App.1980). A review of the record leads, of necessity, to the conclusion that counsel was exceedingly well versed on the facts and the applicable law. At the first trial, a prior statement was used to impeach the witness Blackwell. At the second trial, the cross-examination (which consisted of seventeen pages of testimony) extensively covered the prior relationship between the witness and the appellant and examined possible motives for the witness's testimony. The witness gave some testimony favorable to the appellant. The prior statement was not used for impeachment. The fact that another attorney might have pursued a different course of action at a trial will not support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Cr.App. 1979), *Howell v. State,* 563 S.W.2d 933, 937 (Tex.Cr.App.1978). An isolated evidentiary tactic that from hindsight appears ill-advised, does not necessarily render counsel ineffective. The adequacy of a counsel's assistance is based on the totality of the attorney's representation. *Passmore v. State,* 617 S.W.2d 682, 686 (Tex.Cr.App. 1981). Both the prosecutor and the trial judge commented for the record on the excellent job defense counsel had done. Ground of error seven is overruled.

By ground of error eight, appellant contends that the trial court should have granted a motion for mistrial based on improper jury argument by the prosecutor.

During the state's closing argument at the punishment phase of the trial the following transpired:

> ... I got you everything I could within the confines of evidence. You saw how I tried to get you more.
>
> MS. MARQUEZ: I object to that. That's an—
>
> THE COURT: I sustain the objection and ask the jury not to consider the remarks of counsel for any purpose whatsoever. You have received the evidence, you are entitled to receive under the law and ask you not to consider the remarks for any purpose.
>
> MS. MARQUEZ: We ask for a mistrial.
>
> THE COURT: Overruled.

The only witness testifying during the punishment phase of the trial was the state's fingerprint expert. He identified the fingerprint card of the appellant and two prison packets, which were offered into evidence without objection.

Prosecuting attorneys should confine themselves to the discussion of the evidence submitted to the jury and legitimate deductions drawn therefrom. When evidence is excluded or withdrawn from the jury, the state's attorney should refrain from commenting thereon. *Canova v. State,* 151 Tex.Cr.R. 252, 207 S.W.2d 404, 406 (Tex.Cr.App.1947), *Fletcher v. State,* 141 Tex.Cr.R. 26, 147 S.W.2d 233, 242 (Tex. Cr.App.1941) (On Motion for Rehearing). In the case at bar there was no evidence excluded or withdrawn from the jury's consideration during the punishment phase of the trial.

Ordinarily any injury from improper jury argument by the prosecutor is obviated when an objection is sustained and the jury is instructed to disregard it. This will normally cure any error in a jury argument where new facts are not injected into the record and no mandatory statute is violated. *Johnson v. State,* 583 S.W.2d 399, 408 (Tex.Cr.App.1979). Only when the remarks are so inflammatory that their prejudicial effect cannot be reasonably removed by such an admonition is error presented. *Garza, supra.* Here the objection was sustained and prompt and appropriate instructions given to the jury. The argument was such that any harm that may have been created was removed. Appellant's eighth ground of error eight is overruled.

Appellant lastly complains that he was indicted for the murder of Yolanda Fuentes, but the proof showed the deceased was Yolando Fuentes. He contends this is a fatal variance. This question is raised for the first time on appeal. We find the names to be idem sonans and conclude the appellant could not have been mislead. *Ross v. State,* 496 S.W.2d 78, 79 (Tex.Cr. App.1973); *Christopher v. State,* 479 S.W.2d 281 (Tex.Cr.App.1972). Appellant's ground of error number nine is overruled.

The judgment is affirmed.