**Elbert Glynn GILES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–94–00218–CR.**

Court of Appeals of Texas, El Paso.

Sept. 28, 1995.

---

Scott Segall, El Paso, for appellant.

Jaime E. Esparza, District Attorney, El Paso, for the State.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

CHEW, Justice.

This is an appeal from a conviction for the offense of sexual performance by a child. A jury found the appellant, Elbert Glynn Giles, guilty and assessed punishment at 20 years' confinement in the Texas Department of Criminal Justice—Institutional Division and a $1,000 fine. We affirm.

### Discussion

Giles alleges that his conviction should be reversed on two grounds. First, he alleges that the State violated the Interstate Agreement on Detainer Act (IADA) by returning him to federal custody before the State tried him. Second, Giles alleges that the State failed to try him within 120 days of the date the State obtained custody of him, also thereby violating the IADA.

## Facts Relevant to Giles' IADA Points of Error

The State of Texas indicted Giles for the offenses of indecency with a child and aggravated sexual assault of a child on October 10, 1990. Giles was then in federal custody on similar charges. Giles was convicted of the federal charges, and appealed his federal conviction. On May 14, 1992, during the pendency of his federal appeal, Giles was transferred from federal custody to the custody of the El Paso County Detention Facility pursuant to a request by the State, the receiving jurisdiction, in accordance with the provisions of the IADA. The IADA is codified in Texas as TEX.CODE CRIM.PROC.ANN art. 51.14 (Vernon 1979).

Giles filed a motion to suppress evidence, which the trial court granted on August 19, 1992. The trial court signed the order on August 20, 1992. On August 19, 1992, the State filed a notice of appeal. Giles' state case remained on the State's appeal until June 24, 1994, when this Court issued its mandate affirming the trial court's order. Meanwhile, Giles' federal conviction was reversed and remanded for new trial. On September 4, 1992, while the State's appeal was pending, U.S. Marshals arrived at the El Paso County Detention Facility and, on the basis of a federal order for writ of habeas corpus ad prosequendum, secured Giles and transported him to federal custody to face his new federal trial. After some negotiation, Giles pled guilty to his federal charges on February 17, 1993. U.S. Marshals returned him to the El Paso County Detention Facility on either March 11 or March 12, 1993.

On July 2, 1994, Giles filed a motion to dismiss his State charges based on the State's failure to try him within 120 days of receiving custody pursuant to the IADA. The trial court conducted a hearing on the motion and denied relief on July 11, 1994, finding that the State's appeal had tolled the running of the 120 days. The State of Texas commenced Giles' trial on July 15, 1994 by conducting voir dire, choosing the jury, and swearing the jury. Testimony did not begin until July 20, 1994. Prior to the start of testimony, Giles filed an additional motion to dismiss pursuant to the IADA based on his transfer back to federal authorities before the State of Texas tried him.

Kelly Aguilar, the lead prosecutor on Giles' case, testified at the hearing on Giles' motion to dismiss the indictments. Aguilar stated that no one ever notified her that Giles was to be returned to federal custody. Aguilar did not become aware that Giles had been absent from the El Paso County Detention Facility until he filed his motion to dismiss on July 20, 1994. If Aguilar had known of the federal habeas corpus, she would have made a protest or objection to Giles' release because of the state charges. Donald Marshall, a sergeant with the El Paso County Sheriff Department, testified that his duties include oversight of transfer of prisoners to and from the El Paso County Detention Facility. Marshall stated that he is aware of the requirements of the IADA, but he was never consulted about, or informed of, Giles' release. Marshall further testified that when federal officials present El Paso County Detention Facility officers with a writ signed by a federal magistrate, as was the case here, "[t]hey just walk in and away goes your state prisoners...." Pedro Frias, the El Paso County Deputy Sheriff who signed the release for Giles' return to federal custody, testified that federal marshals presented a writ of habeas corpus signed by a federal magistrate for Giles. Frias stated that in that situation, a prisoner is released to federal custody without question and without notice to the district attorney's office or to anyone else. Frias followed that regular procedure in this case.

## Purpose of the IADA

The IADA is a compact among member states, the United States, the territories and possessions of the United States, the District of Columbia, and the Commonwealth of Puerto Rico. *Bell v. State,* 768 S.W.2d 790, 800 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). The agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. CONST. art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. *Cuyler v. Adams,* 449 U.S. 433, 438–42, 101 S.Ct. 703, 706–08, 66 L.Ed.2d 641, 647–50 (1981).

The IADA establishes a uniform set of procedures for temporarily transferring a prisoner incarcerated in one jurisdiction to the custody of another jurisdiction so that criminal charges pending in the receiving jurisdiction may be resolved. *See Koehler v. State,* 653 S.W.2d 617, 619 (Tex.App.—San Antonio 1983), *reversed on other grounds,* 679 S.W.2d 6 (Tex.Crim.App.1984); Tex. Code Crim.Proc.Ann. art. 51.14, Article I. The agreement was enacted because of the adverse effects on the rehabilitation of prisoners against whom detainers from other jurisdictions have been lodged. *United States v. Mauro,* 436 U.S. 340, 349–51, 98 S.Ct. 1834, 1841–43, 56 L.Ed.2d 329, 340–41 (1978). The agreement was adopted to "encourage the expeditious disposition of charges giving rise to detainers by providing cooperative procedures among member states to facilitate such disposition." *United States v. Umbower,* 602 F.2d 754, 756 (5th Cir.1979). Tex.Code Crim.Proc.Ann. art. 51.14, Article I describes the purpose of the act as follows:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. Tex.Code Crim. Proc.Ann. art. 51.14, Article I.

### Alleged Violations of the IADA

We address Giles' IADA points of error together. In his first point of error, Giles alleges that his indictment should have been dismissed pursuant to Tex.Code Crim.Proc. Ann. art. 51.14, Article IV(e). Article IV(e) reads:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of article V hereof, such indictment, information, or complaint shall not be of any further force or effect and the court shall enter an order dismissing the same with prejudice. Tex. Code Crim.Proc.Ann. art. 51.14, Article IV(e).

Article V(e) reads:

> At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state.

Giles asserts that because federal authorities took him back into federal custody before the State tried him on the state charges, his state indictment was of no further force or effect as of the time of his transfer to federal custody. His conviction, he argues, should thus be reversed.

In his second point of error, Giles alleges that his state indictment should be dismissed because the State failed to try him within 120 days of obtaining custody of him in violation of Tex.Code Crim.Proc.Ann. art. 51.14, Article IV(c). Article IV(c) requires that a trial begin within 120 days of a prisoner's arrival pursuant to the receiving state's request for custody, or the charges must be dismissed with prejudice. There is no doubt in this case that Giles' trial did not commence within 120 days of May 14, 1992, the day the State of Texas obtained custody of him.

We find from the facts in this record, however, that the IADA ceased to apply to Giles as of the date of the reversal of his federal conviction. Article III(a) of the IADA states, in pertinent part:

> *Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment* there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer ... his request for a final disposition to be made of the indictment, information, or complaint.... Tex.Code Crim.

PROC.ANN. art. 51.14, Article III(a). [Emphasis added].

Article IV(a) states in pertinent part:

> The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer *and who is serving a term of imprisonment* in any party state made available ... upon presentation of a written request for temporary custody or availability.... TEX.CODE CRIM.PROC. ANN. art. 51.14, Article IV(a). [Emphasis added].

The protections of the IADA thus apply to one who is serving a term of imprisonment in one jurisdiction and against whom other jurisdiction have lodged detainers. The purpose of the statute is to protect such an individual from adverse effects on his or her rehabilitation resulting from the detainers lodged by other jurisdictions. *Mauro*, 436 U.S. at 349–51, 98 S.Ct. at 1841–43, 56 L.Ed.2d at 340–41. The agreement's goals are to "encourage the expeditious disposition of charges giving rise to detainers by providing cooperative procedures among member states to facilitate such disposition." *United States v. Umbower*, 602 F.2d at 756.

Although the State initially obtained custody of Giles through the IADA because Giles was, at the time, a prisoner serving a term of imprisonment subject to his appeal, once Giles' federal conviction was reversed and remanded for new trial, Giles was no longer a prisoner serving a term of imprisonment in the federal jurisdiction. The goal of the IADA, protecting convicted prisoners from the adverse effects of untried detainers from other jurisdictions on their status and rehabilitation, became inapplicable to Giles when he ceased to be a prisoner serving a term of imprisonment. See e.g. *Koehler*, 653 S.W.2d at 619 (IADA not applicable to defendant not serving term of imprisonment in other jurisdiction and where custody of defendant obtained through IADA). The reversal essentially returned Giles to the status of an accused in custody awaiting trial in one jurisdiction with multiple indictments pending in additional jurisdictions. We find that the IADA did not apply to Giles as of the date of the reversal of his conviction, or at least as of the date federal authorities removed him from State custody for the purpose of his new trial. By at least the date of his removal back to federal custody, September 4, 1992, it was clear that Giles was no longer serving a term of imprisonment in the federal system. At that point, no violation of the IADA had yet occurred. The evidence further shows that federal authorities returned Giles to state custody after he pled guilty to his federal charges without any request on the part of the state. Even though Giles had by then regained his status as a person serving a term of imprisonment, he was not returned pursuant to the IADA. Thus, the IADA never applied to Giles after his federal conviction was reversed. See e.g. *Koehler*, 653 S.W.2d at 619 (IADA inapplicable to defendant when state did not request custody of him pursuant to IADA).

We find it necessary to note that this case is marked with a dismal lack of attention to the procedures set out under the IADA on the part of all parties involved. The IADA specifically makes it the duty of all party jurisdictions to engage in a cooperative effort by designating "an officer who, acting jointly with like officers of other party states, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement, and who shall provide, within and without the state, information necessary to the effective operation of this agreement." TEX.CODE CRIM.PROC.ANN. art. 51.14, Article VII. We find a regrettable lack of evidence of any such cooperation between the state and federal authorities involved in this case. Additionally, we find a complete lack of any procedure within the district attorney's office or between the district attorney's office and the detention authorities to ensure compliance with the IADA. The result is a confused and disorderly process that, but for the fortuitous circumstance of Giles' change in status from a convicted prisoner to an accused no longer covered by the IADA, easily could have forced this Court to order dismissal of serious charges against Giles.

We overrule Points of Error One and Two.

## Conclusion

Having considered and overruled both of Giles' points of error, we affirm the judgment of the trial court.