**Eric ESPINOZA, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–95–00835–CR.**

Court of Appeals of Texas,
San Antonio.

May 7, 1997.

Julie Pollock, Hitchings, Pollock & Bernard, San Antonio, for Appellant.

Robert Boyd Padgett, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before RICKHOFF, GREEN and DUNCAN, JJ.

**OPINION**

DUNCAN, Justice.

■ Pursuant to a detainer based upon an aggravated robbery charge, the State indicted Eric Espinoza on two attempted capital murder charges arising out of the same transaction. Thereafter, Espinoza was convicted on one of the attempted capital murder charges, and the jury assessed punishment at thirty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice. Espinoza was also fined $10,000. In a single point of error Espinoza argues the trial court erred in denying his motion to dismiss the attempted capital murder charges with prejudice, because the State failed to bring Espinoza to trial on the aggravated robbery charge within the time permitted by Article III(a) of the Interstate Agreement on Detainers Act (IADA), and dismissal was therefore re-

quired by Article V(c).[1] We hold that neither the time period in Article III(c) nor the dismissal provision in Article V(c) applies to the non-detainer, "same transaction" attempted capital murder charge underlying Espinoza's conviction in this case.[2] We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Bexar County charged Espinoza with aggravated robbery and filed a detainer with the State of California on May 5, 1994. The detainer was received by officials at Chuckawalla Valley State Prison, where Espinoza was imprisoned, on June 7. Pursuant to Article III(c) of the IADA, prison officials notified Espinoza of the detainer and of his right to request final disposition of the indictment under Article III(a). Espinoza's request for final disposition was received by Bexar County on August 18. After lodging the detainer, but before Espinoza requested final disposition, Bexar County indicted Espinoza on two counts of attempted capital murder arising out of the same transaction as the aggravated robbery. No detainer was lodged for these two additional charges. Bexar County accepted temporary custody of Espinoza and brought him to San Antonio on January 31, 1995.

On October 9, Espinoza filed a motion to dismiss all three charges for failing to bring him to trial on the aggravated robbery—the charge upon which the detainer was based—charge within the 180–day period provided by Article III(a) of the IADA. After hearing the motion and arguments of counsel, the trial court held the State violated the 180–day provision and ordered the aggravated robbery charge dismissed with prejudice pursuant to Article V(c) of the IADA. But the trial court refused to dismiss the non-detainer, "same transaction" attempted capital murder charges. At trial on one of the attempted capital murder charges, Espinoza was found guilty and sentenced. Espinoza now appeals his attempted capital murder conviction, arguing the trial court erred in

failing to dismiss this charge pursuant to Articles III(a) and V(c).

## STANDARD OF REVIEW

In his sole point of error, Espinoza argues the trial court erred in denying his motion to dismiss the attempted capital murder charge underlying his conviction in this case. "While the denial of a defendant's motion to dismiss an indictment under the [IADA] is a question of law reviewed *de novo*, the factual findings underlying the decision are reviewed on a clearly erroneous standard." *Johnson v. State*, 900 S.W.2d 475, 479 (Tex.App.—Beaumont 1995, no pet.)(citing United States v. Hall, 974 F.2d 1201, 1204 (9th Cir.1992)), *aff'd as reformed*, 930 S.W.2d 589 (Tex.Crim. App.1996).

## DISCUSSION

The IADA is a congressionally-sanctioned compact between the United States and the states. *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). As stated in Article I of the Act, "the policy of the party states and the purpose of [the IADA is] to encourage the expeditious and orderly disposition of [outstanding charges] *and* determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." *See Birdwell v. Skeen*, 983 F.2d 1332, 1335 (5th Cir.1993). Consistent with this purpose, the IADA permits a state to file a detainer against a defendant residing in a prison in another state, gain temporary custody of the defendant, and prosecute the defendant on the charge that forms the basis of the detainer. *U.S. v. Mauro*, 436 U.S. 340, 351–53, 98 S.Ct. 1834, 1842–44, 56 L.Ed.2d 329 (1978); *see also* Articles III(a) and IV(a). The Act also provides, however, that once the receiving state obtains temporary custody of the defendant for the purpose of prosecuting the charge that forms the basis of the detainer, the temporary custody extends to all "charges arising out of the same transaction." Specifically, Article V(d) provides:

---

1. The IADA is located in article 51.14, TEX.CODE CRIM. PROC. ANN. (Vernon 1979), and all statutory references are to the "Articles" within article 51.14, unless otherwise noted.

2. Espinoza's second attempted capital murder charge is still pending in the trial court.

The temporary custody referred to in this agreement shall only be for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

In interpreting the Act, the courts have held that Article V(d) permits the receiving state to prosecute the defendant not only for the charge forming the basis of the detainer but also on all other charges arising out of the same transaction. *See Parker v. United States*, 590 A.2d 504, 509–510 (D.C.App.1991), *cert. denied*, 502 U.S. 973, 112 S.Ct. 451, 116 L.Ed.2d 469 (1991); *State v. Griffin*, No. 01C01–9404–CR–00144, 1995 WL 387277, at *4 (Tenn.Crim.App., June 28, 1995, appeal denied) (not designated for publication) [3]; *People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365, 372 (1981); *see also Bokemeyer v. State*, 624 S.W.2d 909, 912 (Tex.Crim.App. [Panel Op.] 1981); *cf. Cooney v. Fulcomer*, 886 F.2d 41, 44 (3d Cir.1989); *accord Commonwealth v. Boyd*, 451 Pa.Super. 404, 679 A.2d 1284, 1288–89 (1996), *appeal denied*, 689 A.2d 230 (Pa.1997).

Once a detainer is lodged, Article III(a) of the Act permits a prisoner, and Article IV(a) entitles the prosecuting state, to request a final disposition of the charge underlying the detainer. In the event a request for final disposition is made, the charge underlying the detainer must be brought to trial within 180 days of the date notice of the request was received. *See* Articles III(a); *see also* Article IV(a) (prisoner must be brought to trial within 120 days of his arrival in the prosecuting state). If this deadline is not met, the charge forming the basis of the detainer must be dismissed with prejudice:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Article V(c); *see also Birdwell*, 983 F.2d at 1336, n. 8.

By its terms, Article V(c) limits dismissal to a charge forming the basis of the detainer, *i.e.*, the aggravated robbery charge in this case. Espinoza argues, however, because Article V(d) has been interpreted to permit the state to prosecute him for all other "charges arising out of the same transaction," Article V(c) also required the trial court to dismiss the non-detainer, "same transaction" attempted capital murder charge underlying his conviction in this case. In other words, Espinoza argues that, just as Article V(d) modifies Article V(c) for purposes of determining the charges that may be prosecuted, Article V(d) also modifies Article V(c) for purposes of determining the charges that must be dismissed. We disagree.

Espinoza cites the Supreme Court's decision in *Cuyler* as support for his argument, because there, in discussing the relationship between the IADA and the Uniform Criminal Extradition Act, the Court stated:

Article III of the Agreement provides the prisoner-initiated procedure. It requires the warden to notify the prisoner of all outstanding detainers and then to inform him of his right to request final disposition of the criminal charges underlying those detainers. If the prisoner initiates the transfer by demanding disposition (which under the Agreement automatically extends to *all* pending charged in the receiving State), the authorities in the receiving State must bring him to trial within 180 days or the charges will be dismissed with prejudice, absent good cause shown.

*Cuyler*, 449 U.S. at 444, 101 S.Ct. at 710. We believe, however, that while this language might appear at first blush to support Espinoza's argument, it should not be inter-

---

**3.** We recognize Rule 19 of the Tennessee Court of Criminal Appeals precludes citation to an unpublished opinion; however, that Tennessee procedural rule does not govern outside that state. *Cf. Exxon v. Banque de Paris et des Pays–Bas*, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988).

preted so broadly. The *Cuyler* Court did not address whether a non-detainer, "same transaction" charge permitted by Article V(d) is subject to the time period in Article III(a) or the dismissal provision in Article IV(c). And our search of state and federal caselaw, as well as the IADA's legislative history, reveals no other authority for Espinoza's argument. To the contrary, the plain and unambiguous language of Article V(c), which nowhere mentions Article V(d) or dismissal, and caselaw lead us to conclude that, insofar as the dismissal of charges is concerned, there is no relationship between Articles V(c) and V(d). *See United States v. Sanders*, 669 F.2d 609, 610–11 (9th Cir.1982) (prosecution of non-detainer charges not precluded by dismissal of charge forming basis of detainer); *People v. Newton*, 764 P.2d 1182, 1189–90 (Colo.1988) (en banc) (same); *see also Boyd*, 679 A.2d at 1288–89 (prosecution on non-detainer charges not subject to dismissal); *State v. Wells*, 94 Ohio App.3d 48, 640 N.E.2d 217, 223 (1994) (same); *Ramirez v. State*, 455 N.E.2d 609, 612–14 (Ind.Ct.App.1983) (same), *aff'd by an equally divided court*, 471 U.S. 147, 105 S.Ct. 1860, 85 L.Ed.2d 113 (1985). In line with these authorities, we hold that neither the time period in Article III(a) nor the dismissal provision in Article V(a) applies to a "same transaction" charge that does not form a basis of the detainer.

### CONCLUSION

■ Neither the language of the Interstate Agreement on Detainers Act nor its legislative history or interpretative caselaw indicates that Congress intended for the 180-day deadline in Article III(a) or the dismissal provision in Article V(c) to apply to a "same transaction" charge that does not form a basis of the detainer. Given this dearth of authority, we reject Espinoza's argument and hold that the trial court did not err in refusing to dismiss the non-detainer, "same transaction" attempted capital murder charge underlying Espinoza's conviction in this case. Espinoza's point of error is therefore overruled, and the judgment is affirmed.