**The STATE of Texas, Appellant,**

v.

**Julius SEPHUS, Appellee.**

**No. 10–98–338–CR.**

Court of Appeals of Texas, Waco.

Oct. 25, 2000.

Dissenting Opinion of Justice Gray, Nov.1, 2000.

Ray Montgomery, Leon County Dist. Atty., Centerville, Gina M. Debottis, Sp. Prosecution Unit, Huntsville, for appellant.

Frank Blazek, Smither, Martin, Henderson & Blazek, P.C., Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

After an evidentiary hearing, the trial judge dismissed an indictment for capital murder, with prejudice. The State appealed. Because we find that the dismissal was required by the plain meaning and mandate of the Interstate Agreement on Detainers (the "Detainers Act"), we affirm.[1] Tex.Code Crim.Proc.Ann. art. 51.14 (Vernon 1979).

**1.** The author became responsible for drafting

## FACTS

The pertinent facts established by the record are:

- Sephus was charged with capital murder in Leon County, alleged to have occurred on August 24, 1994;
- Sephus was charged with capital murder in Harris County, alleged to have been committed on a date prior to the Leon County offense;
- Sephus was convicted in April of 1995 of a federal offense arising out of the Leon County event in the United States District Court in Waco, for which he was confined to the U.S. Penitentiary, Allenwood in the State of Pennsylvania for a term of "life without parole";
- In October of 1995, the District Attorney having authority for prosecutions in Leon County placed a "detainer" against Sephus with the Allenwood penitentiary;
- On November 27, 1995, the warden of the Allenwood penitentiary notified the District Attorney that Harris County had requested disposition of pending charges in Harris County; the warden's letter was received in the District Attorney's office on December 14, 1995;
- In November of 1996, Sephus was tried in Harris County and convicted of capital murder and assessed life in the penitentiary;
- No earlier than December 1996, but no later than May 1997 and most likely no later than January 31, 1997, Sephus was returned to the federal penitentiary in Pennsylvania to resume serving his federal sentence;
- In January of 1997, a new District Attorney with responsibility for prosecutions in Leon County took office;
- In May of 1997, the District Attorney began attempts to have Sephus

a majority opinion on August 7, 2000.

brought to Texas for trial on the Leon County charge of capital murder;

- After several communications with the Allenwood federal penitentiary, the District Attorney on July 7, 1997, requested that the detainer be released;
- The Allenwood facility released the detainer on July 8, 1997;
- Seven "Writs of Habeas Corpus Ad Prosequendum" were issued by the Leon County District Clerk, dated July 2, 1997(2), July 10, 1997, July 14, 1997, June 20, 1997, and October 22, 1997(2);
- On November 7, 1997, Sephus was arraigned in the District Court in Leon County;
- On April 27, 1998, Sephus filed a "Motion to Dismiss for Violations of the Interstate Agreement on Detainers Act;"
- On September 14, 1998, several months after the hearing on Sephus' motion, the District Attorney filed a response.

## THE ORDER

In the order dismissing the indictment, the trial court made five factual findings:

1. Defendant was tried and convicted, in April, 1995, in the Federal District Court, Waco, Texas, for several offenses arising out of the Normangee bank robbery, which is also the basis for this prosecution. He was convicted and sentenced to life in prison, without eligibility for parole. He began serving his Federal prison sentence in Pennsylvania. Leon County, Texas, maintained a detainer on Defendant for the pending capital murder charge.

2. In 1995, Harris County, Texas, through the use of the Interstate Agreement on Detainers Act, obtained temporary custody of Defendant from the United States prison officials in Pennsylvania. While in the temporary custody of the authorities of Harris County, Texas, Defendant was tried and convicted of capital murder, receiving a life sentence in November, 1996.

3. In 1997, Defendant was returned by the State of Texas to the Federal Prison Authorities, in Pennsylvania, without disposing of the criminal charges pending in Leon County, Texas.

4. On November 7, 1997, Defendant was brought to Leon County, Texas, from Pennsylvania, pursuant to a Writ of Habeas Corpus ad Prosequendum and Leon County's request for temporary custody.

5. No trial date has been scheduled within 120 days of Defendant's return to Leon County, Texas.

The court concluded that prosecution of the Leon County offense was barred under the Detainers Act.

## THE DETAINERS ACT

The trial court decided this case under Article IV of the Detainers Act. Article IV provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Paragraph (a) of Article V hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his

own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in Paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(d) Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in Paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executing authority of the sending state has not affirmatively consented to or ordered such delivery.

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of Article V hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

*Id.* Article IV. Subparagraph (e) of Article V provides: "(e) At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." *Id.* Article V(e).

## THE ISSUES

On appeal, the State asserts three issues:

1. The trial court erred in dismissing the indictment in this cause as appellee did not follow proper procedures to trigger the Interstate Agreement on Detainers.

2. The trial court erred in dismissing the indictment in this cause as appellee waived any rights he had under Article IV of the Interstate Agreement on Detainers.

3. The trial court erred in dismissing the indictment in this cause as appellee waived any rights he had under Article III of the Interstate Agreement on Detainers.

## STANDARD OF REVIEW

■ We review the decision to dismiss *de novo* but review the findings supporting that decision under the "clearly erroneous" standard. *United States v. Hall,* 974 F.2d 1201, 1204 (9th Cir.1992); *Espinoza v. State,* 949 S.W.2d 10, 11 (Tex.App.—San Antonio 1997, pet. ref'd).

## APPLICATION

The court's conclusion under Article IV is sustained by the first, second, and third findings, which are not contested by the State. Findings four and five are immaterial.

Significantly, the State's brief does not assert that Article IV is inapplicable; its argument is limited to "waiver of the rights [Sephus] had under Article IV." The first issue presented by the State raises the question of whether Sephus followed the proper procedures to "trigger the In-

terstate Agreement on Detainers." The argument under this issue is limited to a discussion of the prisoner's duties under Article III to make a request and to provide the notices required under that article so as to invoke the "anti-shuttling" provisions of the act. No mention of Article IV is made. The State's second and third issues are limited to an argument that Sephus waived the provisions of Articles III and IV of the act after he was returned to Texas the second time. As we will discuss, those issues are immaterial to the question of whether he was entitled to a dismissal with prejudice when he was returned to Pennsylvania after his first trip to Texas to stand trial in Harris County. By failing to address its applicability, the State effectively concedes that Article IV applies.

*Article III*

The State's first issue questions whether Sephus took steps necessary to invoke the Detainers Act and provided the notices required by Article III. However, the court's second finding that Harris County used the Detainers Act to secure Sephus' return to Texas is supported by the record. Thus, as we will show, Article IV rather than Article III sets the standard by which Sephus' right to a dismissal is measured. Issue one has no merit.

*Article IV*

Under Article IV, the prisoner is transferred to the requesting state without consideration of the prisoner's feelings about a transfer, and not at his request. Nothing is required of the prisoner. Article IV simply provides: "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Paragraph (e) of Article V hereof, such indictment, informa-

tion, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." TEX.CODE CRIM.PROC.ANN. art. 51.14, Article IV(e). Dismissal does not depend upon a motion by the prisoner; the right to a dismissal with prejudice flows from the statute. *See id.*

■ We must give the statute effect according to its plain meaning. *State v. Mason*, 980 S.W.2d 635, 638 (Tex.Crim. App.1998) ("focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment"); *Boykin v. State*, 818 S.W.2d 782, 786–87 (Tex.Crim.App.1991).

■ While Leon County's detainer was pending with federal authorities, Sephus was returned to Texas at the request of Harris County. The Leon County prosecutor was given notice of his return to Texas, and after he was tried in Harris County, Sephus was sent back to the federal penitentiary in Pennsylvania without being tried on the Leon County indictment. Applying the literal text of the statute to the facts: "[Because] trial [was] not had on [the Leon County] indictment, ... prior to [Sephus'] being returned to [Pennsylvania] pursuant to Paragraph (e) of Article V hereof, [the Leon County] indictment, ... [is of no] further force or effect, and the court shall enter an order dismissing the same with prejudice." *See id.*; TEX.CODE CRIM.PROC.ANN. art. 51.14, Article IV(e).[2] Thus, the trial judge correctly analyzed the facts and applied the Detainers Act to them.

*Wavier*

■ The State's second and third issues assert that Sephus waived the benefits of

---

2. Because the Detainers Act also states that its goal is to "encourage the expeditious and orderly disposition of such charges ... based on untried indictments," the result in this case cannot be said to be absurd. TEX.CODE CRIM.PROC.ANN. art. 51.14, Article I (Vernon 1979); *Johnson v. State*, 871 S.W.2d 744, 749 (Tex.Crim.App.1994) (Only when the literal text of a statute is unclear or would lead to results so absurd that the Legislature could not possibly have intended them should courts resort to extraneous means in statutory interpretation.).

both Article IV (second issue) and Article III (third issue). As we have noted, Article III is inapplicable, and we do not reach the third issue. With respect to waiver under Article IV, the State urges only that during Sephus' second trip to Texas he waived the 120 day period allowed for trial under Article IV. However, under the literal reading of Article IV(e), which we must apply, the 120 day period for the State to try Sephus never came into play because a trial was already barred. The statute says an "indictment, . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice" when a prisoner is returned to the sending state without being tried on that indictment. TEX.CODE CRIM.PROC.ANN. art. 51.14, Article IV(e). Thus, the statute operates, as the trial court concluded, to bar prosecution under the indictment. What occurs thereafter cannot revive a barred indictment. The State's waiver argument is without merit.

### REPLY TO DISSENT

The dissent criticizes the decision to affirm the trial court's ruling, arguing that Sephus never raised Article IV(e). This theory supporting *reversal* by the dissent is wrong, both factually and legally. Factually, the record establishes that the Article IV(e) issue was presented to the trial court. In a reply brief filed approximately one month before the court's ruling, Sephus argued:

> The State contends that the Interstate Agreement on Detainers (IADA) does not apply because the Defendant did not make his request for disposition in the proper form or give proper notice. The evidence shows without controversy that Harris County, in 1995, obtained Defendant's presence in Texas through a request for temporary custody and the IADA. Thus the IADA provisions re-

quiring that all Texas cases be disposed prior to returning Defendant to Federal Custody are applicable. The IADA can be invoked by either the action of the State or the Defendant. In Harris County the IADA was invoked expressly by the State of Texas.

> . . .

The State's response ignores Defendant's contention that all Texas cases must be disposed prior to the return of Defendant to Federal custody. If one county gets temporary custody of Defendant, under the IADA, all other Texas counties with pending charges must dispose of those prosecutions before Defendant is returned.

Thus, Sephus *did* raise an Article IV(e) theory when he asked the trial court to dismiss the indictment.

Legally, even if Sephus had not relied upon Article IV(e) when urging the trial court to dismiss the indictment against him, we should affirm the trial court's decision under the long-standing rule of appellate procedure whereby we affirm a judgment when it is correct on any theory of law applicable to the case. *See, e.g., McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App.1997). Thus, even if Sephus had failed to raise the issue, under the basic principle of appellate jurisprudence that a trial court's ruling should be upheld on any legal basis applicable to the case, the court's judgment should be affirmed.

We affirm the trial court's order dismissing the indictment with prejudice.

Justice GRAY dissents.

TOM GRAY, Justice, dissenting.[1]

Ruby Parker was murdered. In a prosecution on federal charges by the United

---

1. The majority chose to issue their opinion before my dissent had been finalized. Issuance of the majority opinion triggers various appellate deadlines. *See* TEX.R.APP.P. 49 and

68. And although the parties know one justice dissented from the majority opinion, the parties do not know the basis of the dissenting opinion and are thus prejudiced in pursuing

States of America, Julius Sephus was convicted of killing her. He received a life sentence. He is serving this sentence in a federal prison in Pennsylvania. After his conviction, he was sent to Harris County, Texas, to stand trial for capital murder of two men in Houston. Sephus was convicted and sentenced to life in prison. He was returned to the federal prison in Pennsylvania. Later, Leon County acquired custody of Sephus for trial on a state charge for the capital murder of Ruby Parker.

At trial and on appeal, Sephus argued for a dismissal only under Article III(d) and alternatively, under Article IV(c) of the Interstate Agreement on Detainers Act. Tex.Code Crim.Proc.Ann. art. 51.14 (Vernon 1979). The trial court granted his request for a dismissal.

I cannot agree with the majority's opinion for several reasons. First, it is fundamental that before a defendant may obtain relief, he must raise a complaint, at a time and in a manner reasonably calculated to apprise the trial court of the basis of the complaint and at a time when the trial court could remedy the problem. The majority affirms the trial court's decision on a basis that has never been raised by anyone at any level, and on a theory which the State has never had any reason or opportunity to defend. Second, Sephus requested a dismissal believing that Leon County initiated an Article IV request for temporary custody. When Leon County acquired Sephus, the detainer had been dismissed. Thus, the Detainers Act did not apply, and Sephus was not entitled to a dismissal pursuant to it. Third, a dismissal of the indictment does not further the purposes of the Detainers Act and is not required. Therefore, I dissent.

## THE INTERSTATE AGREEMENT ON DETAINERS ACT

The Interstate Agreement on Detainers Act (Detainers Act) is a compact entered into by most states, the United States and the District of Columbia to establish procedures for resolution of one state's outstanding charges against a prisoner being held by another state. *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 662, 145 L.Ed.2d 560 (2000). It is a congressionally mandated compact and is subject to federal construction. *Hill*, 120 S.Ct. at 662; *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 708–709, 66 L.Ed.2d 641 (1981). The Detainers Act prescribes procedures by which a prisoner may demand the speedy disposition of charges pending against him in another jurisdiction (Article III), as well as procedures by which a state may obtain custody, for purposes of trial, of a prisoner who is incarcerated in another state (Article IV). Donald M. Zupanec, M.A., J.D., Annotation, *Validity, construction, and application of Interstate Agreement on Detainers*, 98 A.L.R.3d 160, 167 (1980).[2]

## ARTICLE III's APPLICATION

Based on the record before us, I agree with the five-lined paragraph of the majority opinion holding that Article III is in no way applicable to this proceeding. I would, however, have preferred a more extensive discussion of the law and the facts pertinent to this decision since there is no authority in Texas that sets out the applicability requirements for Article III. Be that as it may, the majority continues to allow defendants and prosecutors to drift in the murky waters of the Detainers Act.

I disagree with the remainder of the opinion.

further appellate review. So far as I am aware, this is the first time a majority of this court has not awaited a forthcoming dissent. Justice is not something that can be rushed. It has been said that justice delayed is justice denied. But the corollary is also true, a timely result that is wrong is not justice. Thus, I

also express my dissent from the majority's decision to publish their opinion without issuing the dissent at the same time.

2. This annotation contains many citations from jurisdictions across the United States which have construed the Detainers Act.

## SEPHUS'S ARTICLE IV ARGUMENT

Because Article III is inapplicable to this case, the next logical step is to look at Sephus's Article IV argument. As previously stated, Article IV gives one state an opportunity to acquire custody of a defendant in another state to pursue convictions on pending charges. In his motion to dismiss presented to the trial court, Sephus argued [3] that a dismissal was required pursuant to Article IV(c) because *Leon County*, not Harris County, requested temporary custody under Article IV(a) and his trial had not been conducted within the Article IV(c) 120 day requirement. *See* TEX.CRIM.PROC.ANN. art. 51.14, Art. IV(a) and (c) (Vernon 1979). He presented no other alternative theories to the trial court.[4] The Leon County District Attorney, however, contended that Sephus was not in custody at that time due to a request under the Detainers Act. He maintained that he dismissed the detainer and acquired Sephus through a writ of habeas corpus ad prosequendum.

The trial court, however, found that Sephus had not been tried within 120 days and dismissed the indictment. From the trial court's last two findings of fact, it is evident that this is the basis upon which the trial court dismissed the indictment. The majority wants to ignore these findings of the trial court, deeming them "immaterial." By finding that the trial had not been held within 120 days of his delivery to Leon County, it is clear the court believed that Leon County had a detainer on file, had initiated an Article IV request and had violated the 120 day trial requirement. These findings are only immaterial because they obstruct the position taken by the majority.

## WAIVER OF ARTICLE IV(e)

The majority raises an Article IV(e) argument for Sephus and uses that argument to affirm the trial court's dismissal of the indictment. Article IV(e) has been referred to as the "anti-shuttling" provision because generally, if a defendant is brought to a state under the Detainers Act and then is transferred back to his original place of confinement without a trial on all remaining pending charges, those untried indictments "shall not be of any further force or effect, and the trial court shall enter an order dismissing" them. *See Id.* Art. IV(e). Sephus neither argued at the dismissal hearing nor on appeal that Article IV(e) applied to his case. The State never presented a defense to Article IV(e). The trial court never contemplated Article IV(e) as a means to dismiss the indictment.

Being subject to federal construction, the federal courts have considered whether an Article IV(e) violation can be raised for the first time on appeal. *See United States v. Hill*, 622 F.2d 900 (5th Cir.1980); *United States v. Eaddy*, 595 F.2d 341 (6th Cir.1979). In *Eaddy*, a detainer was lodged against a defendant by the U.S. Marshal's Service while the defendant was in prison in Michigan. The defendant was shuttled back and forth between state and federal custody on at least two occasions after the filing of the detainer but before trial. When asked to dismiss the federal indictment because of violations of the Detainers Act, the trial court declined. Among other issues, the defendant raised an Article IV(e) violation for the first time on appeal. The Sixth Circuit responded to this issue stating, "Despite the mandatory language of Article IV, the rights created by the [Detainers Act] are for the benefit of the prisoner. They exist for his protection and are personal to him. (citations omitted). We conclude, therefore, that the rights of a prisoner under the [Detainers Act] may be waived." *Eaddy*, 595 F.2d at 344. The court determined that the sanctions of Article IV are not triggered automatically when the Detainers Act is violated. *Id.* at 346. The court also concluded that "prisoner rights created by the [Detainers Act] are waived by forfeiture or

---

3. This argument was the alternative argument to his initial Article III complaint.

4. He presented no other alternative theories to us on appeal.

default if not raised prior to or during trial." *Id*.

The Fifth Circuit echoed this holding in *Hill*. A California prisoner was shipped to Georgia pursuant to a writ of habeas corpus ad prosequendum. A detainer had also been filed with the California prison. The prisoner complained in a motion to dismiss that the Government had violated Article V(c) of the Detainers Act. The trial court denied the motion and the prisoner was convicted. The Fifth Circuit vacated the conviction. While this was occurring, the prisoner was shipped back to California. The prisoner again filed a motion to dismiss, this time based on an Article IV(c) violation. The lower court again denied the motion. On appeal, the prisoner argued that the Government violated Article IV(e), the anti-shuttling provision, by returning him to California before bringing him to trial in Georgia. The Fifth Circuit concluded that this argument "has been foreclosed below because Hill did not raise the contention in the district court," and cited *Eaddy*. *Hill*, 622 F.2d at 908.

Looking at this waiver concept in a different light, an appellate court in Michigan found an Article V(d) violation that the defendant did not raise. However, following federal guidance, the court refused to consider the effect of the violation because it was not raised at the trial court or even on appeal and was waived. *People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365, 372 (1981).

Sephus never asked for a dismissal based on Article IV(e); he only raised Article III(d) and Article IV(c) violations. He has waived his right to complain about an Article IV(e) violation. Consequently, we cannot raise it for him either.

The majority points to a passage in a letter to the trial court in an effort to overcome the waiver. It is not persuasive. The letter is by Sephus's attorney in reply to the State's response to his Motion to Dismiss. Sephus's motion *only* attacked the indictment on violations of Article III(d) and Article IV(c). The response by the State *only* refuted violations of Article III(d) and Article IV(c). The letter replies to each of the State's responses. It only *generally* refers to the Detainers Act and never *specifically* mentions Article IV(e) anywhere. No cases were cited to support an Article IV(e) dismissal. The last paragraph of the letter which is cited by the majority is merely an assertion, again, of Sephus's primary contention; that is, the case should be dismissed under Article III(d) because Sephus was transported back to Pennsylvania before disposal of the Leon County charges.

Article III, in its entirety, is not applicable to the case at hand. Article IV(e) was never mentioned in writing, never argued before the trial court or this court, and never defended by the State. I cannot agree to use isolated and vague bits of a letter to say that it was previously raised by Sephus.

After raising the issue for Sephus and then stating that Sephus raised this issue, the majority goes further by saying that even if Sephus had not raised Article IV(e), "we should affirm a trial court's decision when it is correct on any theory of law applicable to the case." I am very reluctant to do this. First, the case law cited by the majority pertains primarily to rulings on the admission or exclusion of evidence. *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App.1997). Second, we have no factual basis on which to make this decision.

An important reason for an appellate court's general refusal to consider issues not raised below is the incompleteness of the record on such issues. In the nature of things, neither party is likely to have introduced evidence relevant to issues not raised at trial. Thus the appellate court has no factual basis, or at best a shaky basis, on which to make a decision. Also, the appellate court lacks the benefit of the trial judge's views on the matter, views that might contribute to a sounder appellate resolution.

Daniel John Meador & Jordana Simone Bernstein, Appellate Courts in the United States 56 (1994).

The record before us is incomplete. We don't know when Harris County received custody of Sephus. We don't know if Leon County really had a detainer on file at the time Harris County requested temporary custody. We don't know why no one notified officials in Leon County that Sephus was in the state, that the trial in Harris County was completed or that they were sending Sephus back to Pennsylvania. We don't know whether Sephus, himself, or his counsel requested his return to the prison in Pennsylvania. We don't know if a detainer, if on file, was a detriment to Sephus's rehabilitation or even if he was involved in any rehabilitative programs because of his life sentence. We don't know if his return to Leon County was disruptive of his rehabilitative programs if any were in place.

All of these things that we don't know, either singularly or in combination, would make a difference in whether a dismissal is required under Article IV(e). And, all of these things that we don't know were not developed in the hearing in the trial court because they were irrelevant to the issues raised in Sephus's motion to dismiss. The State had no reason to introduce any of this missing evidence or refute evidence admitted because no Article IV(e) dismissal argument was ever made. I cannot agree to affirm this dismissal of capital murder on a complaint not raised.

*Article IV's Application*

What Sephus raised in the alternative to his Article III complaint, what the State argued against and what the trial court ruled on is whether *Leon County*, not Harris County, acquired Sephus under Article IV(a) and if so, did the county violate the 120 day rule set out in Article IV(c). Our job is to review whether the decision based on *that* question is in error. Because in the context of the argument made by Sephus the Detainers Act does not even apply, the trial court's ruling was erroneous.

Article IV permits a State to request custody of a prisoner housed in another state in order to stand trial on pending charges in the requesting State. The trial has to be held within 120 days of the date the prisoner arrives in the requesting State. Tex.Code Crim.Proc.Ann. art. 51.14, Art. IV(c)(Vernon 1979).

Sephus argued that his case should be dismissed because *Leon County*, not Harris County, requested temporary custody of him under Article IV and had not tried him within 120 days of the date he arrived in Leon County. He presented no other alternative theories. The Leon County District Attorney contended that Sephus was not in custody due to a request under the Detainers Act. He maintained that he dismissed the detainer and acquired Sephus through a writ of habeas corpus ad prosequendum. The trial court, however, found that Sephus had not been tried within 120 days and dismissed the indictment.[5] In the record before us, the evidence shows that Leon County acquired custody of Sephus through a writ of habeas corpus ad prosequendum after the detainer the county had initially requested was dismissed.

On appeal, the State argued that the trial court's decision to dismiss the indictment was in error because Sephus waived his complaint when he agreed to continuances past 120 days.[6] Granted, the State

---

5. From the trial court's finding of fact number 5, it is evident that this is the basis upon which the trial court dismissed the indictment. By finding that the trial had not been held within 120 days of his delivery to Leon County, it is clear the court believed that Leon County had a detainer on file and had not had it dismissed.

6. In response to the trial court's finding that the 120 day rule was violated, the State argues Sephus waived his right to obtain relief on this basis. The State is correct. As will be discussed, the 120 day requirement is not applicable to Sephus. However, if it is applicable, Sephus waived the application of the time limits within which he must be tried under the act by requesting or agreeing to the

did not advocate on appeal, as it had in the trial court, that the Detainers Act no longer applied. However, in order to even reach the State's proposed issue, we must first decide, based on Sephus's argument, if the Detainers Act applies to Sephus's return to Leon County. It does not.

The United States Supreme Court has said that once a detainer is lodged against a prisoner, the Detainers Act is applicable, and a state or governmental entity must comply with its provisions. *United States. v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978). However, in *Mauro*, the government attempted to secure the presence of a prisoner through a writ of habeas corpus ad prosequendum when a detainer was currently on file. The Court's opinion did not address whether the same would be true if a detainer was dismissed prior to the acquisition of the prisoner by the other jurisdiction. Current Chief Justice Rehnquist, in his dissent to the majority opinion in *Mauro*, suggested that when a prisoner does not invoke the procedures of the Detainers Act, then nothing in the agreement binds the government to its terms and conditions. *Id.* at 1851 (Rehnquist, J., dissenting). The protections of the Act have only been held applicable where a prisoner is tried on charges for which a detainer is currently filed. *See Browning*, 310 N.W.2d at 372. At the time Sephus asked for his dismissal under the Detainers Act, the detainer from Leon County had been dismissed.

Our sister court in El Paso has already decided that a change in circumstances can invalidate a Detainers Act complaint. *See Giles v. State*, 908 S.W.2d 303 (Tex. App.—El Paso 1995, pet. ref'd). In *Giles*, the State indicted the defendant who was in a federal prison serving time (as opposed to awaiting trial). The defendant appealed his federal conviction, but while the appeal was pending, he was transported to El Paso pursuant to the State's request under the Detainers Act. While in the State's custody, the trial court suppressed evidence, and the State appealed. During the pendency of the State's appeal, the defendant's federal conviction was reversed and the U.S. Marshals retrieved the defendant for his new trial in federal court. The defendant pled guilty to the federal charges and was returned to El Paso. He filed two motions to dismiss in state court for violations of the 120 day rule and the anti-shuttling provision of Article IV. These were denied.

On appeal, the El Paso court found that the Detainers Act no longer applied to the defendant. Specifically, the court stated:

> Although the State initially obtained custody of Giles through the IADA because Giles was at the time, a prisoner serving a term of imprisonment subject to his appeal, once Giles' federal conviction was reversed and remanded for new trial, Giles was no longer a prisoner serving a term of imprisonment.... The goal of the IADA ... became inapplicable to Giles when he ceased to be a prisoner serving a term of imprisonment.... The reversal essentially returned Giles to the status of an accused in custody awaiting trial in one jurisdic-

---

continuances, failing to timely assert his rights or failing to timely object on this basis. *See New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (Court rejected the argument that waiver of the 120 day rule can be effected only by an affirmative request by the prisoner); *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (Court's failure to observe the 120 day rule not cognizable "when the defendant registered no objections to the trial date at the time it was set ..."); *United States v. Scallion*, 548 F.2d 1168, 1174 (5th Cir.,1977)

(Court agreed that Scallion waived violation of 120 day requirement.); *Ex Parte Saylor*, 734 S.W.2d 55, 57 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (agreed resetting of trial date not counted in 120 day period); *Huffines v. State*, 646 S.W.2d 612, 613 (Tex.App.—Dallas 1983, pet. ref'd) (where State and the accused agree to a continuance without further explanation the time of the continuance is deemed "necessary and reasonable" under the acts provision and not counted as part of the 120 day period).

tion with multiple indictments pending in additional jurisdictions. We find that the IADA did not apply to Giles as of the date of the reversal of his conviction. . . . At that point, no violation of the IADA had yet occurred.

*Giles,* 908 S.W.2d at 306. It follows, then, that the dismissal of a detainer would also invalidate the applicability of the Detainers Act.

Other states have contemplated whether a withdrawal or dismissal of a detainer would release the parties from the obligations of the Detainers Act. A Colorado court held that where a detainer was not officially withdrawn, the prisoner was properly processed through the Detainers Act and affirmed the denial of his writ of habeas corpus. *Massey v. People,* 656 P.2d 658, 660 (Colo.1982). In New York, the state's supreme court declared a detainer void because the issuing state did not try the prisoner within the proscribed time periods of the Detainers Act; however, the issuing state charges were not affected by the declaration, and the prisoner could not halt extradition proceedings when arrested on those outstanding charges. *People ex rel. Kinkade v. Finnerty,* 128 Misc.2d 515, 490 N.Y.S.2d 420, 422 (N.Y. County Ct.1985, *pet. denied* ). *See also Gayles v. Hedman,* 309 Minn. 289, 244 N.W.2d 154 (1976); *State v. West,* 79 N.J.Super. 379, 191 A.2d 758 (1963).

I have found nothing, nor has the court been presented with anything, in the Detainers Act or case law to suggest that a State continues to be bound by the Detainers Act if a detainer is filed and then later dismissed. Therefore, the trial court's decision to dismiss the indictment based on a violation of the 120 day rule was erroneous because the detainer had been dismissed, and the Detainers Act was not invoked when Sephus was transferred to Leon County.

*No Dismissal Required*

Even if Sephus did not waive an Article IV(e) complaint and even if the Detainers Act applied, Article IV(e) does not abso-

lutely require a dismissal of the indictment. And, we *should not* affirm the dismissal in this case.

The Detainers Act was established in response to perceived problems with handling prisoners who had pending charges in different states. It was enacted with relatively little discussion and no apparent opposition. *Mauro,* 98 S.Ct. at 1843. Federal courts have discussed that before the enactment, detainers were commonly filed, often with little basis in fact, which worked to a prisoner's detriment. *Carchman v. Nash,* 473 U.S. 716, 729–730, 105 S.Ct. 3401, 3408, 87 L.Ed.2d 516 (1985). The concern was that:

. . . a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner, he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

*Cuyler,* 101 S.Ct. at 712; *Mauro,* 98 S.Ct. at 1843 1844. To remedy these problems, the statute was created to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Tex.Code Crim.Proc.Ann. art. 51.14, Art. I (Vernon 1979). With the passage of the Act, a prisoner could clear his record of detainers based on what was feared by the proponents of the Act to be unsubstantiated charges and force the state lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial. *See Carchman,* 105 S.Ct. at 3409.

But, where there is no evidence that a detainer was being used contrary to the purposes of the Detainers Act or in accordance with the practices at the time the Act was proposed, a drastic sanction of dismissal should not apply. *See Commonwealth v. Petrozziello*, 22 Mass.App.Ct. 71, 491 N.E.2d 627, 633, *rev. denied*, 397 Mass. 1104, 494 N.E.2d 388, *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

This concept has not been addressed by a court in Texas. However, other states have been unwilling to dispose of their usually weighty charges, on technical violations of the Detainers Act.

Some courts have found that where charges are pending in more than one jurisdiction of the receiving state and one jurisdiction does not know either the prisoner is in the state or, as in this case, he was being returned to the sending state, a dismissal is not appropriate.

The Special Appeals Court in Maryland was faced with the dismissal of an armed robbery charge for a violation of Article IV(e). *Boyd v. State*, 51 Md.App. 197, 441 A.2d 1133, *aff'd*, 294 Md. 103, 447 A.2d 871 (1982). In *Boyd*, the defendant committed armed robberies in two counties in Maryland and in the District of Columbia (D.C.). After the defendant pled guilty to the D.C. charge and was sentenced to a term of imprisonment, Montgomery County, Maryland, officials filed a detainer with the D.C. authorities. He was sent to face charges in Prince George County, Maryland, because of a request by that county for temporary custody. No one notified Montgomery County of Prince George County's request for temporary custody or that the defendant would be in Maryland pursuant to it. After the defendant appeared in Prince George County, pled guilty to the charges pending and was sentenced, he was returned to D.C. without Montgomery County ever knowing he was in the state.

In affirming the decision to reject the defendant's motion to dismiss, the Maryland court stated that all parts of the Detainers Act had to be read together, in harmony, to carry out its purpose. *Id.* Relying on *Mauro*, the court stated,

In that light, an indictment "contemplated" in Art. IV(e) can only mean an indictment which (1) forms the basis of a detainer lodged against the prisoner pursuant to Art. III(a), *and* (2) is the object of either a request for final disposition by the prisoner ... or a request by the prosecutor for temporary custody....

*Id.* The court continued,

Although at the time of appellant's first presence in Maryland pursuant to Prince George's (sic) County request a detainer had been lodged against him based upon the Montgomery County indictment, no request had been made by either appellant or Montgomery County for the disposition of *that* indictment, and appellant was not delivered to Maryland in order to be tried on *that* indictment. (emphasis added).

*Id.* at 1138–1139. For those reasons, the Maryland court found that the indictment was not one "contemplated" by Article IV(e) in the context of the defendant's earlier appearance in Prince George County and that the article did not require it to be dismissed. *Id.* at 1139.

In Florida, an appellate court looked at a similar situation. *Williams v. State*, 426 So.2d 1121 (Fla.Dist.Ct.App. 1st Dist. 1983), *pet. denied*, 437 So.2d 677 (Fla. 1983). In *Williams*, the defendant escaped from jail in Union County, Florida, committed additional crimes in Marion County, Florida, and was arrested in New York for crimes committed there. Both counties in Florida filed detainers with officials in New York. The defendant was transferred to Marion County to face charges under a request for temporary custody. Union County was not notified that the defendant was in Florida. Accordingly, the defendant was returned to New York after his trial in Marion County

and without a disposition of the Union County escape charge.

In a very short opinion, the Florida court affirmed the denial of a motion to dismiss. The court found that New York failed to give notice to Union County that the defendant was being brought to Florida, and failed to see why Florida should be denied the right to enforce its criminal laws because of the oversight of New York. *Id.* at 1122.

In Suffolk District, Massachusetts, a defendant shot and killed a Boston police officer during an armed robbery of a grocery store. The defendant had also committed an armed robbery in Berkshire District. He was arrested by the federal authorities on the warrant for the murder and for a federal parole violation. He was sent from a federal prison to Berkshire and Suffolk to be arraigned on their respective charges. When he was acquitted of the armed robbery charge in Berkshire, he was inadvertently sent back to the federal prison without Suffolk knowing of his return and without Suffolk trying him on the murder charge. The trial court refused to dismiss the murder charge. The appellate court agreed and held that the sanction of dismissal of a first degree murder charge should not apply where the return was the result of a mistake and the prosecutor from Berkshire was unaware of his transfer. *Petrozziello*, 491 N.E.2d at 633. The court recognized that this was not a case where the detainers were used to exact a punishment without having to try an unwinnable case. *Id.* The court declined to dismiss serious charges when the dismissal would not further the purpose of the Detainers Act. *Id.* at 633–634.

Courts have also declined to dismiss charges where there is no proof that the prisoner's rehabilitation was disrupted.

In Tennessee, the trial court refused to dismiss indictments on attempted kidnaping, attempted aggravated assault, and attempted arson when a prisoner was sent back to federal custody to ease jail overcrowding. The defendant had been arraigned in Tennessee and had asked for more time to prepare for trial. When it was granted for one month, the sheriff sent the defendant back to his original place of confinement. The Court of Criminal Appeals affirmed the trial court's action because, it stated, "[t]he purpose of the 'anti-shuttling' provisions of the ... Detainers Act is to provide prisoners with the opportunity to continue their rehabilitative programs while promoting the speedy disposition of outstanding charges." *Ball v. State*, 891 S.W.2d 240, 241 (Tenn. Crim.App.1994). The court determined that the violation was technical and inadvertent. *Id.* at 242. It also noted that there was no claim that the defendant's return interfered with his rehabilitation or that he was even in any rehabilitative programs. *Id.* A dismissal, it held, would not further the purposes of the Detainers Act. *Id.*

Massachusetts has echoed this sentiment, holding that a dismissal of serious charges, such as murder, under the Detainers Act, requires proof that the prisoner's rehabilitation has been adversely affected. *Petrozziello*, 491 N.E.2d at 633. *See also Malone v.. United States*, 482 A.2d 768, 770 (D.C.1984) (court looked to whether the transfer has contravened the overarching general purpose of the Detainers Act to eliminate uncertainties which obstruct programs of prisoner treatment and rehabilitation).

In our case, Leon County only knew that Harris County had requested temporary custody of Sephus. Leon County did not request temporary custody, and Sephus did not request a disposition of his Leon County charge. Leon County was not notified when Sephus was brought to Texas, when he was tried in Harris County or when he was returned to Pennsylvania. And while this was going on without the county's knowledge, Leon County changed district attorneys twice. Sephus was confined under life sentences from both the federal conviction and the Harris County

convictions. He never contended that Leon County's detainer caused him any disadvantage or prevented him from participating in prison programs, that he was engaged in rehabilitative programs and if he was, that the transfer to Leon County was disruptive of those programs.

Ruby Parker is dead, and Sephus stands accused. What resulted in Sephus's transfer back to Pennsylvania was not a product of prosecutorial abuse of the detainer system where the pending charge was unsubstantiated or not winnable. The dismissal of his indictment for capital murder will not promote the purposes of the Detainers Act. Therefore, we should not, and I cannot, affirm the trial court's dismissal of the indictment.

CONCLUSION

Because the State had no reason to contest or opportunity to defend and present evidence to refute a dismissal based on Article IV(e), the Detainers Act is not applicable, and if it were, it was not violated and because dismissal does not further the Act's purpose, I cannot agree with the majority opinion. I respectfully dissent.