TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00665-CR






Hugo Augustine Villegas, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2003-372, HONORABLE GARY L. STEEL, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Hugo Augustine Villegas appeals his conviction by a jury of burglary of a habitation. 
On appeal, he challenges the trial court's denial of his motion to dismiss the indictment
against him on the ground the State failed to comply with certain provisions of the Interstate
Agreement on Detainers Act (IADA or the Act). (1) For the reasons that follow, we affirm the
judgment of conviction.


BACKGROUND


 Appellant was indicted in October 2003 for burglaries occurring in Comal County
on May 29, 2003. Subsequently, he was indicted in Comal County on a charge of possession of a
controlled substance on June 11, 2003, for which he was found guilty after a jury trial in
January 2004. Meanwhile, before he could be sentenced on the drug charge, appellant was indicted
and pleaded guilty to the federal offense of transporting undocumented aliens in April 2004. He was
sentenced to thirty-seven months in federal prison in July 2004, which he began to serve in
Pollock, Louisiana.

 Appellant was transported back to Comal County from federal custody for sentencing
on the drug charge on November 22, 2004. On that date, appellant requested and completed a form
to obtain a court-appointed attorney. Appellant was scheduled to appear on the burglary charge that
same date, but his newly appointed counsel was unable to appear in court due to flooding in the
county. The proceeding was reset for December 9, 2004. On that date, there was some confusion
about whether appellant was still in the county jail or had been returned to federal custody; the
county jail prisoner list for court appearances showed that appellant was scheduled to be produced
in court on that date. Appellant's appointed counsel advised the court that the State had tendered
a plea offer that appellant had rejected and that his client now wished to hire private counsel. 
Counsel requested a continuance until appellant hired new counsel. The record shows that appellant
remained in local custody until at least December 10, 2004; at some unspecified point thereafter, for
a reason not appearing in the record, appellant was returned to federal custody with the burglary
charge still pending.

 While serving his sentence in federal custody, on March 15, 2005, appellant wrote
a letter to the Comal County district judge reciting the cause number of his indictment and the nature
of the charges against him. Appellant stated that he "waived" his rights under article III of the
"Interstate Agreement Act" and requested that the court set his trial date "as soon as possible and
have me present for this process and procedure." On April 6, appellant's counsel filed a motion for
leave to file additional motions along with a motion for discovery and disclosure of specific items
of evidence. On April 17, appellant wrote to the county clerk of the court requesting the address and
telephone number of his court-appointed counsel so he could be approved for a "client/attorney
phone call." He requested the information be furnished as soon as possible and asked whether a
court date had been set and to be advised if one had been set.

 A month later, on May 18, 2005, appellant sent a letter to the judge demanding a
speedy trial. Appellant stated that he had complied with the requirements of article III of the
"Interstate Agreement Act" and requested prompt disposition of his charges as guaranteed by the
Sixth Amendment. He urged that the State "has a duty to make a diligent and good faith effort to
secure" his presence and to afford him a speedy trial. He also complained that his court-appointed
attorney was not responding to his communications, and he expressed confusion as to whose
responsibility it was to assist him in filing motions and to secure his presence for trial. Appellant was
transported to the Comal County jail in late August 2005.

 Trial on the burglary charges was set for September 5, 2005. On August 31, 2005,
appellant filed a motion for speedy trial and to dismiss his indictment with prejudice for a violation
of article III of the IADA on the ground that appellant timely requested a speedy trial and the State
failed to bring the case to trial on or before April 1, 2005. On September 1, 2005, he supplemented
the motion, asserting that the State had improperly returned appellant to federal custody prior to
disposition of all pending charges in violation of the "anti-shuttling" provision of article IV(e) of the
IADA. After hearings on the motion to dismiss prior to trial on September 6 and 7, 2005, the trial
court denied the motion, and the case proceeded to trial. A jury found appellant guilty of two counts
of burglary of a habitation and made an affirmative finding of the use of a deadly weapon in the
commission of the offense. The trial court assessed his eighty-year sentence to run concurrently with
his sentence for the federal conviction.


ANALYSIS


 Appellant urges that the trial court erred in failing to dismiss the indictment because
of the State's failure to comply with various provisions of the IADA. Specifically, appellant
contends that the trial court erred in finding that appellant waived his right to a trial within the 180-day time-limit provision of the Act and that the State violated the Act by returning appellant to
federal custody before final disposition of his state burglary charge.


Standard of Review

 The denial of a defendant's motion to dismiss an indictment under the IADA is a
question of law reviewed de novo and the factual findings underlying that decision are reviewed on
a clearly erroneous standard. State v. Miles, 101 S.W.3d 180, 183 (Tex. App.--Dallas 2003,
no pet.); Lindley v. State, 33 S.W.3d 926, 930 (Tex. App.--Amarillo 2000, pet. ref'd); State v.
Sephus, 32 S.W.3d 369, 372 (Tex. App.--Waco 2000, pet. ref'd); see also United States v. Hall, 974
F.2d 1201, 1204 (9th Cir. 1992). A clearly erroneous standard is "highly deferential" to the trial
court's fact findings. E.g., Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004); Jasper
v. State, 61 S.W.3d 413, 421-22 (Tex. Crim. App. 2001).



The Interstate Agreement on Detainers Act

 The IADA is a congressionally sanctioned compact between the United States and
the states, which provides the procedure whereby persons who are imprisoned in one state, and who
are also charged with crimes in another state or federal jurisdiction, can be tried expeditiously for
the pending charges while they are serving their current sentences. Cuyler v. Adams, 449 U.S. 433,
442 (1981); Birdwell v. Skeen, 983 F.2d 1332, 1336 (5th Cir. 1993). Because the Act is a
congressionally sanctioned interstate compact, it is subject to federal construction, and Supreme
Court interpretations of the Act are binding on state courts. Cuyler, 449 U.S. at 442.

 Article I of the Act provides that "it is the policy of the party states and the purpose
of this agreement to encourage the expeditious and orderly disposition of [outstanding] charges and
determination of the proper status of any and all detainers based on untried indictments,
informations, or complaints." Tex. Code Crim. Proc. Ann. art. 51.14, art. I (West 1979). Consistent
with this purpose, the IADA allows a state to file a detainer against a defendant residing in a prison
in another state, gain temporary custody of the defendant, and prosecute the defendant on the charge
that forms the basis of the detainer. United States v. Mauro, 436 U.S. 340, 351-52 (1978); see also
Alabama v. Bozeman, 533 U.S. 146, 150 (2001).

 The IADA also provides a mechanism for a person incarcerated in one jurisdiction
with charges pending against him in another jurisdiction to be tried on the pending charges before
being released from incarceration in the first jurisdiction. Tex. Code Crim. Proc. Ann. art. 51.14,
art. I. Either the defendant or the jurisdiction where the charges are pending may demand that the
defendant be tried on the pending charges. Id. arts. I, III, V.

 Article III gives a prisoner against whom a detainer has been lodged the right to
"request" a "final disposition" of the relevant charges and prescribes the procedures for a prisoner
to follow in requesting disposition of charges for which a detainer has been filed against him. Id.
art. III. Article III "basically . . . gives a prisoner the right to demand a trial within 180 days."
Bozeman, 533 U.S. at 151. The IADA requires that the defendant "shall be brought to trial within
180 days"--unless extended by the trial court for good cause shown. Tex. Code Crim. Proc. Ann.
art. 51.14, art. III(a). If the requesting prisoner is not brought to trial within the specified time
period, the relevant indictment, information, or complaint "shall not be of any further force or effect,
and the court shall enter an order dismissing the same with prejudice." Id. art. III(a), (d). (2)

 To request final disposition under article III, a defendant must cause "to be delivered
to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written
notice of the place of his imprisonment and his request for a final disposition to be made of the
indictment." Id. art. III(a); Lindley, 33 S.W.3d at 929. The IADA provides that a defendant can
perform this requirement by sending the written notice and request for final disposition to the official
having custody of him, who would then forward it to the appropriate prosecuting official and court
by registered or certified mail. Tex. Code Crim. Proc. Ann. art. 51.14, art. III(b). The 180-day
provision does not commence "until the prisoner's request for final disposition of the charges against
him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged
the detainer against him." Fex v. Michigan, 507 U.S. 43, 52 (1993); State v. Powell, 971 S.W.2d
577, 580 (Tex. App.--Dallas 1998, no pet.). The inmate bears the burden of demonstrating
strict compliance with the procedural requirements of article III. Walker v. State, 201 S.W.3d
841, 846 (Tex. App.--Waco 2006, no pet.); Lindley, 33 S.W.3d at 930; Bryant v. State, 819 S.W.2d
927, 930-31 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd); see also United States v. Henson,
945 F.2d 430, 434 (1st Cir. 1991).

 Article IV applies when a state that has charges pending against an inmate
incarcerated in another state requests the transfer of the inmate. Tex. Code Crim. Proc. Ann. art.
51.14, art. IV; (3)
 Bozeman, 533 U.S. at 150-51. Article IV permits prosecuting authorities in the state
in which charges are pending against the prisoner to obtain his custody for purposes of trial.
Tex. Code Crim. Proc. Ann. art. 51.14, art. IV(a). Once the prisoner arrives in the receiving state,
the "trial" must begin within 120 days unless extended for "good cause." Id. art. IV(c). Article IV
also includes an anti-shuttling provision, which requires the prisoner to be tried on any outstanding
charges before he is returned to federal custody. Id. art. IV(e).


The Motion to Dismiss

 The record shows appellant filed two motions: a First Supplemental Motion for
Speedy Trial and Motion to Dismiss with Prejudice ("first motion") filed on August 31, 2005, and
a Second Supplemental Motion for Speedy Trial and Motion to Dismiss with Prejudice ("second
motion") filed on September 1, 2005. (4) The first motion cited appellant's right to a speedy trial under
the IADA, referencing his trial setting of September 5, 2005. Appellant asserted that he had been
served with a copy of the State's detainer on October 3, 2004, and that he had timely requested a
speedy trial pursuant to article III. He asserted, "The State['s] failure to timely prosecute this cause
on or before April 1, 2005 which was the 180th day after [appellant's] request for final disposition
pursuant to the Interstate Agreement on Detainers Act has caused irreparable harm and prejudice to
[appellant]," and he urged dismissal with prejudice pursuant to article III(d) of the IADA.

 Appellant's second motion again recited that appellant was served with a copy of the
State's detainer on October 3, 2004, and timely requested a speedy trial for final disposition pursuant
to article III. He then alleged that on November 22, 2004, he appeared in court for sentencing in his
drug case and that he was scheduled for a pretrial conference on the same date in his burglary case. 
He asserted that he was sentenced in the drug case, but that his counsel in the burglary case was
unable to appear in court because of heavy rains and flooding. Appellant then asserted that, after he
was sentenced in the drug case, he was returned to federal custody prior to the disposition of all
pending charges out of Comal County in violation of article IV(e) of the IADA. "Pursuant to
Art. 4(e) IADA," appellant urged that his remaining burglary charge should be dismissed.


Preservation of Error

 Appellant filed a motion to correct and modify his points of error on appeal to include
an additional ground the substance of which was not included in the motion to dismiss filed in
the trial court below. Specifically, appellant sought to correct and modify his brief to include the
anti-shuttling provision of article III(d) as an additional ground for dismissal. (5)
 After this Court denied the motion, appellant sought reconsideration of the motion and then, in a reply brief and letter
to the Court, sought consideration of the additional ground as unassigned error. We again decline
to consider the additional ground and overrule the motion for reconsideration because it was not
raised or considered in the court below. See Sanchez v. State, No. PD-1754-05, 2006 Tex. Crim.
App. LEXIS 2382, at *10 (Tex. Crim. App. Dec. 13, 2006) (permitting review of unassigned error
only if preserved in trial below); Pena v. State, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006)
(citing Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990)).

 Our rules for appellate review generally require a claim of error to be preserved. 
Texas Rule of Appellate Procedure 33.1 specifies how a complaint is preserved:


 As a prerequisite to presenting a complaint for appellate review, the record must
show that:


 (1) the complaint was made to the trial court by a timely request, objection, or motion
that:


 (A) stated the grounds for the ruling that the complaining party sought from the trial
court with sufficient specificity to make the trial court aware of the complaint, unless
the specific grounds were apparent from the context; . . . and


 (2) the trial court:


 (A) ruled on the request, objection, or motion, either expressly or implicitly; or


 (B) refused to rule on the request, objection, or motion, and the complaining party
objected to the refusal.



Tex. R. App. P. 33.1(a). A general or imprecise objection may be sufficient to preserve error for
appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel. 
Buchanan v. State, No. PD-0006-06, 2006 Tex. Crim. App. LEXIS 2032, at *6 (Tex. Crim. App.
Oct. 18, 2006). When the grounds are not specific and the legal basis is not obvious, the issue is not
preserved. Id.; Aldrich v. State, 104 S.W.3d 890, 894 (Tex. Crim. App. 2003); see also 43A
George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 42.03
(2d ed. 2001) ("Preservation of error is required, the Court of Criminal Appeals has frequently
indicated, in order to provide trial courts or opposing counsel with opportunities to prevent or cure
errors so as to permit trial proceedings to continue to a final conclusion free from attack and reversal
on appeal."). The policies for requiring specificity pertain here--to inform the trial judge of the
basis of the objection and afford him the opportunity to rule on it, and to afford opposing counsel
an opportunity to address the objection or supply other testimony. Aldrich, 104 S.W.3d at 894.

 Here, appellant made clear to the trial judge through the first motion that he sought
dismissal based initially on article III(a) because the State failed "to timely prosecute his cause on
or before April 1, 2005 which was the 180th day after [appellant's] request for final disposition
pursuant to the Interstate Agreement on Detainers Act." In the second motion, appellant added an
assertion that appellant's return to federal custody in December 2004 prior to the disposition of all
pending charges out of Comal County violated his rights under the anti-shuttling provisions of article
IV(e). Because these were the only two grounds stated with sufficient particularity to make the trial
court aware of the complaint and were the only grounds considered and ruled upon by the trial court,
they are the only grounds preserved on this appeal.

 Based on appellant's written motions specifying these two provisions, prior to the
commencement of trial, two hearings were held.


The Hearings

 On September 6 and 7, 2005, prior to jury selection, the trial court held hearings on
appellant's motions to dismiss under the IADA. Testimony at the hearings focused on appellant's
claims that both the time-limits provision of article III(a) and the anti-shuttling provision of IV(e)
were violated. These two issues were the only issues raised at the hearings by appellant's motions
and responded to by the State.

 Appellant testified that he had sought to obtain a speedy trial under the IADA and at
no time had he wanted to give up his rights under article III of the Act. Appellant testified that he
wrote the March 2005 letter to notify the district attorney and district clerk that he "waived" his
rights under article III but that he did not understand what the word meant. Appellant claimed that
in a draft of a letter he had used the word "exercise," but that he changed it to a "legal" word. In
May 2005, he wrote a second letter to the court stating that he had complied with all of the
requirements for prompt disposition of the detainer and was seeking a speedy trial.

 At the hearing, the parties also adduced evidence regarding the continuance granted
in December 2004 when appellant was sentenced on the drug charge and had advised his appointed
counsel in his burglary case that he wished to hire new counsel. After the court concluded
that appellant had sought a continuance to obtain new counsel, that he had waived his rights under
article III, and that his rights were not violated because the trial was timely, appellant's counsel then
argued that "independent" of the "180-day clock" of article III, "we still have the anti-shuttling claim
under Article IV(e), which is the fact that Mr. Villegas was returned to federal prison for his--before
this matter was resolved." No additional testimony was adduced. Thus, the hearing focused only
on the two provisions that formed the basis of the motions to dismiss in the court below: article III(a)
in the first motion relating to the timeliness of the trial and article IV(e) in the second motion relating
to the State's obligation to try appellant on pending charges before returning him to federal custody. 

 At the close of the hearing, the trial court denied appellant's motion on both article
III and IV grounds. The judge observed that statutory rights under the IADA can be waived:


 And that's what my ruling is going to be based upon. When an individual takes up
those legal books and starts playing with the legal system and starts representing
themselves, I think it's an affront to justice to then allow them to come in here and
pretend like they didn't understand what they were doing when it was appropriate for
whatever ruling they want.


 You can't come in and waive a right asking for a speedy trial and then, when you get
here, decide maybe that wasn't a good way to go. "I'm sorry. I didn't mean
'waive.'" I want the record to clearly represent and reflect that I was able to review
the credibility of this witness while he was testifying.


 I also looked at the exhibit I admitted, which is the exhibit that is purported to be the
rough draft and somehow the word "waived" slipped into it; that based upon the
convenience to the defendant of that--as well as the context of that letter is totally
incredible and not accepted as a fact in this case.



After finding the defendant not credible in continuing to assert at the hearing that he did not
understand the meaning of the word "waive," the court then observed that he found the defendant
to be "sophisticated," that "[h]e understands what is going on before the Court," and is trying
"to burn the candle at both ends." The court found that the defendant knowingly and intelligently
waived his rights under article III of the IADA, that article IV did not apply, and denied the motion
on both article III and IV grounds.


The Issue on Appeal

 In his supplemental brief on appeal, appellant urged that the State violated the time-limit provision of article III(a) and the anti-shuttling provision of article IV(e). The State responded
that, because appellant was brought back pursuant to article III and the State did not perfect the
transfer under article IV, (6) only the provisions of article III were invoked. With the filing of his reply
brief, appellant now agrees that "because it was the appellant who initiated the provisions of the
IAD[A], pursuant to the provisions of Article III of the act," the provisions of article III--and not
article IV--apply.

 For the first time on appeal, however, appellant now argues that, because article IV
was not invoked and article III contains an anti-shuttling provision in paragraph (d) similar to that
in article IV(e), he should be allowed to raise the anti-shuttling issue pursuant to article III(d). We
disagree. Although articles III and IV contain similar provisions, they address different
circumstances. Article IV provides for a request for the production of a prisoner by another state
where charges are pending, while article III addresses a request by a prisoner for disposition of
pending charges in another state. Compare Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a), with
id. art. IV(a). Because of the specificity of the written motions and the focus at the hearings on the
specific provisions cited in the motions, only the issues properly raised by motion and resolved at
the hearing are preserved. See Buchanan, 2006 Tex. Crim. App. LEXIS 2032, at *10; Aldrich, 104
S.W.3d at 894. Appellant may not use the grounds cited below to support a different legal theory
on appeal. See Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); Rezac, 782 S.W.3d at 870. 
Appellant did not voice his current complaint that the State violated the anti-shuttling provision of
article III(d) at the hearings below; the issue was not addressed at the hearings; and he cannot be
heard to now raise it on appeal. (7) Having reviewed the two motions, the evidence adduced at the
hearings, the argument of counsel, and the court's findings and conclusions, we hold that the only
issue preserved for appeal is the time-limits provision of article III(a). The remaining question, then,
is whether appellant waived his speedy trial rights under article III(a).


Waiver

 1. Trial court finding of waiver

 The rights granted by the IADA can be waived by a defendant. E.g., Bozeman, 533
U.S. at 157 (holding that defendant may waive his rights under IV(e)); New York v. Hill, 528 U.S.
110, 114 (2000) (holding that defendant may waive his rights under article III); Brown v. Wolff, 706
F.2d 902, 907 (9th Cir. 1983) (finding waiver if defendant "affirmatively requests to be treated in
a manner contrary to the procedures prescribed by the IAD[A]"); People v. Jones, 495 N.W.2d 159,
160 (Mich. Ct. App. 1992) (finding waiver if defendant, "either expressly or impliedly, agrees or
requests to be treated in a manner contrary to the terms of the IAD[A]").

 What suffices for waiver depends on the nature of the right at issue. Hill, 528 U.S.
at 114. "[W]hether the defendant must participate personally in the waiver; whether certain
procedures are required for waiver; and whether the defendant's choice must be particularly
informed or voluntary, all depend on the right at stake." United States v. Olano, 507 U.S. 725, 733
(1993). In Hill, the Supreme Court reasoned that certain basic rights may be waived only by the
defendant and that for other rights, waiver may be effected by action of counsel. 528 U.S. at 114-15. 
There is no requirement that a waiver of rights under the IADA be made "knowingly or intelligently"
because the Act's protections are not founded on constitutional rights. E.g., Cooney v. Fulcomer,
886 F.2d 41, 46 (3d Cir. 1989) (holding violation of IADA is not an infringement of a constitutional
right); United States v. Black, 609 F.2d 1330, 1334 (9th Cir. 1979) (same); Camp v. Unites States,
587 F.2d 397, 400 (8th Cir. 1978) (same); see also Gray v. Benson, 608 F.2d 825, 826-27
(10th Cir. 1979) (finding defendant waived IADA rights by requesting transfer to obtain medical
treatment); United States v. Scallion, 548 F.2d 1168, 1170, 1174 (5th Cir. 1977) (finding defendant
estopped from raising article IV(e) claim where he requested return for parole hearing).

 Appellant argues that, because the March 2005 "waiver" letter was written after he
was returned to federal custody, it could not constitute a waiver and, further, that the letter "fails to
constitute a voluntary and knowing waiver" of his rights. We disagree. After writing a letter to the
judge waiving his rights under article III in March 2005 and seeking an expedited trial date in May,
appellant was transported to Comal County in August. He then filed pretrial motions and a motion
seeking dismissal. After conducting two hearings prior to jury selection, the court expressly found
that appellant had knowingly waived his rights to the time-limits provision of article III and that
article IV did not apply until appellant's return to Comal County in August 2005. The court
therefore denied the motions on both article III and IV grounds as raised in appellant's motions. 
After a hearing that included appellant's testimony, the trial court expressly found that appellant's
waiver of his speedy trial rights constituted a waiver of his article III(a) right to have trial on the state
charges within 180 days.

 Courts have strictly applied the provisions of the IADA. Bozeman, 533 U.S. at 153. 
The burden rests on the prisoner to demonstrate compliance with the procedural requirements of
article III. Lindley, 33 S.W.3d at 930. Our standard of review is highly deferential to the trial court's
fact findings. Hall, 974 F.2d at 1204; Sephus, 32 S.W.3d at 372. Here, appellant has failed to show
that he satisfied this burden. Based upon the evidence adduced at the hearings, the trial court's
finding that appellant had waived his rights under the time-limits provision of article III, and the
standard of review, we cannot say that the trial court clearly erred.


 2. Computation of the time-limits provision

 Moreover, the triggering event for the running of the 180-day time period is the
receipt by the non-custodial state--in this case, Texas--of the prisoner's request for a final
disposition of the indictment against him. The duty of notifying the appropriate prosecuting officer,
in order to invoke the 180-day provision, is specifically placed upon the defendant under the Texas
version of the IADA, "after he shall have caused to be delivered to the prosecuting officer . . . his
request." Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a). Article III(a) provides that the notice
and request for a final disposition shall be accompanied by a certificate of the appropriate official
having custody of the prisoner, stating the term of commitment under which the prisoner is being
held, the time already served, the time remaining to be served on the sentence, the amount of good
time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency
relating to the prisoner. Id.

 Appellant asserts that he was served with a detainer on October 3, 2004, and that he
timely requested a speedy trial for final disposition pursuant to article III on the same day. When he
was returned to Comal County on November 22, he was sentenced on the drug charge for which he
had been tried, but through his appointed counsel appellant then sought an adjournment of the
hearing and a continuance to hire new counsel in place of his appointed counsel. At some point in
December 2004, appellant was returned to federal custody. The record does not show when
appellant was returned. In March 2005, appellant advised the court that he waived his article III
speedy trial rights and requested a trial setting.

 Before this court can determine whether appellant was brought to trial "within the
required 180 days," we must first determine the date that triggered the running of the time period. 
Appellant argues that the State exceeded 180 days, but he did not claim which letter was sufficiently
in compliance with the IADA requirements so as to trigger the beginning of the 180-day time period. 
In his reply brief, appellant urges that "now that we agree that Section 3 is applicable . . . new
computations should be made." He argues that the 180-day time limit began on October 19, 2004,
when the "prisoner's paperwork" was delivered to the prosecuting officer. In his reply brief,
appellant urges,


 Disregarding all other events with regard to tolling the statute provisions, appellant's
computations would indicate that on April 17, 2005, the 180 days would terminate. 
Therefore, absent the "waiver letter ruling" and the continuance ruling, appellant's
case should have been tried by April 17, 2005.


To demonstrate compliance with the requirements of III(a), appellant references only a single
document evidencing the prosecuting attorney's receipt on October 19, 2004, of a document entitled
Evidence of Agent's Authority to Act for Receiving State. But there are no attachments showing
appellant's further compliance with article III(a). The information required by article III(a) does not
appear in the record.

 Even assuming appellant's compliance with the application requirements, the trial
court made findings excluding the time periods (i) when appellant sought a continuance through his
counsel to obtain new counsel and (ii) between the March "waiver" letter and his May letter
requesting prompt disposition of his case. Article III(a) provides "that for good cause shown in open
court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant
any necessary or reasonable continuance." Id. art. III(a). The record shows that appellant was
returned to Comal County on November 20, 2004, and received appointed counsel. His counsel
failed to appear at the November 22 hearing due to flooding. On December 9, 2004, the court
granted a continuance to allow appellant to obtain retained counsel. Appellant requested a prompt
trial setting in May 2005. The record supports the trial court's conclusion that the State did not
exceed 180 days following appellant's request and taking into account any continuances.


 3. Presence of appellant

 Appellant urges that his rights were violated and the court erred in granting a
continuance at the request of his counsel on December 9, 2004, when appellant was not present in
court. Citing articles 28.01 and 33.03 of the Texas Code of Criminal Procedure and his due process
rights under the Texas Constitution in his reply brief, appellant contends that the trial court erred in
conducting a "hearing" outside the presence of appellant. See id. arts. 28.01, 33.03 (West 2006). 
At the hearings in September 2005, the court found that on December 9, 2004, the court appointed
counsel for appellant and nothing else happened: "[I]t's not notice of pretrial. It's not notice of trial. 
It's not a waiver of arraignment. It's notice of arraignment pretrial." In a brief colloquy between
the trial court, appellant's newly appointed defense counsel, and the prosecutor, defense counsel
advised the court that the State had tendered a plea offer that appellant had rejected and that
appellant intended to hire private counsel. Defense counsel evidently thought appellant was "already
in federal custody." No hearing was held, and no evidence was received. Because the IADA
expressly provides for the court to grant "any necessary or reasonable" continuances "for good cause
shown in open court, the prisoner or his counsel being present," see id. art. 51.14, art. III(a)
(emphasis added), and no hearing was held, we hold that the trial court did not err in granting a
continuance until appellant could retain counsel.


CONCLUSION


 Having overruled appellant's points of error, we affirm the judgment of conviction.








 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: February 13, 2007

Do Not Publish

1. Tex. Code Crim. Proc. Ann. art. 51.14, arts. I-IX (West 1979).
2. Article III(a) provides:


 Whenever a person has entered upon a term of imprisonment in a penal or
correctional institution of a party state, and whenever during the continuance
of the term of imprisonment there is pending in any other party state any
untried indictment, information, or complaint on the basis of which a detainer
has been lodged against the prisoner, he shall be brought to trial within 180
days after he shall have caused to be delivered to the prosecuting officer and
the appropriate court of the prosecuting officer's jurisdiction written notice
of the place of his imprisonment and his request for a final disposition to be
made of the indictment, information, or complaint; provided that for good
cause shown in open court, the prisoner or his counsel being present, the
court having jurisdiction of the matter may grant any necessary or reasonable
continuance.


Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a).
3. Article IV provides in relevant part:


 (c) In respect of any proceeding made possible by this article, trial shall be
commenced within 120 days of the arrival of the prisoner in the receiving
state, but for good cause shown in open court, the prisoner or his counsel
being present, the court having jurisdiction of the matter may grant any
necessary or reasonable continuance.

 

 . . . .


 (e) If trial is not had on any indictment, information, or complaint
contemplated hereby prior to the prisoner's being returned to the original
place of imprisonment pursuant to Paragraph (e) of Article V hereof, such
indictment, information, or complaint shall not be of any further force or
effect, and the court shall enter an order dismissing the same with prejudice.


Tex. Code Crim. Proc. Ann. art. 51.14, art. IV.

4. These are the only motions to dismiss on IADA grounds appearing in the record; there is
no original motion in the record.
5. Article III(d) provides in relevant part:


 Any request for final disposition made by a prisoner pursuant to Paragraph
(a) hereof shall operate as a request for final disposition of all untried
indictments, informations, or complaints on the basis of which detainers have
been lodged against the prisoner from the state to whose prosecuting official
the request for final disposition is specifically directed. . . . If trial is not had
on any indictment, information, or complaint contemplated hereby prior to
the return of the prisoner to the original place of imprisonment, such
indictment, information, or complaint shall not be of any further force or
effect, and the court shall enter an order dismissing the same with prejudice.


Tex. Code Crim. Proc. Ann. art. 51.14, art. III(d). 

6. Article IV also requires that a "detainer" be lodged against the prisoner. Here, the State
first filed a writ of habeas corpus ad prosequendum, which does not constitute a detainer within the
meaning of the Act. See, e.g., United States v. Mauro, 436 U.S. 340, 349 (1978); United States v.
Beard, 41 F.3d 1486, 1489 (11th Cir. 1995); United States v. Jones, 938 F.2d 447, 449
(3d Cir. 1991). The State subsequently lodged a detainer against appellant but did not otherwise
comply with the provisions of article IV(e). We need not address this issue, however, because the
parties agree that the requirements of Article IV were not met and this issue is therefore not
before us.
7. Although appellant argues that the anti-shuttling provisions of articles III and IV are
"exactly the same," they are not. Article III(d) provides in pertinent part:


 If trial is not had on any indictment, information, or complaint contemplated
hereby prior to the return of the prisoner to the original place of
imprisonment, such indictment, information, or complaint shall not be of any
further force or effect, and the court shall enter an order dismissing the same
with prejudice.


Tex. Code Crim. Proc. Ann. art. 51.14, art. III(d) (emphasis added).


 Article IV(e) contains a similar provision but incorporates an additional element:


 (e) If trial is not had on any indictment, information, or complaint
contemplated hereby prior to the prisoner's being returned to the original
place of imprisonment pursuant to Paragraph (e) of Article V hereof, such
indictment, information, or complaint shall not be of any further force or
effect, and the court shall enter an order dismissing the same with prejudice.


Id. art. IV(e) (emphasis added).


 Article V(e) provides:


 At the earliest practicable time consonant with the purpose of this agreement,
the prisoner shall be returned to the sending state.


Id. art. V(e). Although the provisions in these articles are similar, article III(d) provides that the
prisoner may not be returned to the "original place of imprisonment," while article IV(e) provides
that the prisoner may not be returned to the "original place of imprisonment pursuant to Paragraph
(e) of Article V hereof." (Emphasis added.) Courts that have compared these provisions note the
differences between them. See, e.g., Nebraska v. Reed, 668 N.W.2d 245, 257-58 (Neb. 2003);
Merchant v. Wyoming, 4 P.3d 184, 188-89 (Wyo. 2000) (holding that "original place of
imprisonment" is more restrictive in article III while article IV allows for the return of the prisoner
to the "sending state").